THE STATE OF OHIO, APPELLEE, *v.* BROOM, APPELLANT.

[Cite as State *v.* Broom (1988), 40 Ohio St. 3d 277.]

278

(No. 87-1674—Submitted November 1, 1988—Decided December 30, 1988.)

*John T. Corrigan,* prosecuting attorney, *Jack H. Hudson* and *Timothy J. McGinty,* for appellee.

*John J. Higgins,* for appellant.

WRIGHT, J.  Romell Broom appeals his conviction and sentence of death. We uphold the conviction and the sentence of death for the reasons that follow.

This court is required to undertake a three-part analysis in all death penalty cases. *State* v. *Clark* (1988), 38 Ohio St. 3d 252, 527 N.E. 2d 844. First, we must consider all the issues raised by the appellant with respect to the proceedings. below. Second, we must independently weigh the aggravating circumstances against any mitigating

factors to determine whether the death sentence is an appropriate sanction. Finally, we must independently determine whether appellant's sentence is disproportionate to the death penalty imposed in similar cases. *Id.* at 253, 527 N.E. 2d at 847.

## I

Appellant has raised twenty-four propositions of law. The fifth, sixth, eighth, thirteenth, fourteenth, sixteenth, eighteenth and nineteenth propositions were neither raised nor briefed in the court of appeals. Such failure constitutes waiver of any errors involved, under the principle of *res judicata. State* v. *Greer* (1988), 39 Ohio St. 3d 236, 247, 530 N.E. 2d 382, 397. In *Greer* we held that "capital defendants are not entitled to special treatment regarding evidentiary or procedural rules. * * * [Citations omitted.] We will utilize the doctrine of waiver where applicable; yet we must also retain power to *sua sponte* consider particular errors under exceptional circumstances. * * * [Citations omitted.] This we shall continue to do under our plain error standard of analysis." *Id.* at 244, 530 N.E. 2d at 394. "Plain errors * * * affecting substantial rights may be noticed although they were not brought to the attention of the Court." Crim. R. 52(B); *State* v. *Long* (1978), 53 Ohio St. 2d 91, 7 O.O. 3d 178, 372 N.E. 2d 804.

## A

In his first proposition of law, appellant contends that he was denied a fair trial by the admission of evidence of other acts, specifically all evidence concerning the attempted kidnapping of Venita McKenney on September 18, 1984, and the attempted kidnapping of Melinda Grissom on December 6, 1984. We note that appellant was positively identified either in a lineup or a showup and in the courtroom by both of the victims and numerous witnesses to those two incidents. The jury was given a carefully drafted limiting instruction to explain that the evidence concerning those two incidents was admitted only for the purpose of considering whether those acts tended to show intent, motive, scheme, plan or system for the September 21 and 22 kidnapping, rape, and murder of Tryna Middleton and attempted kidnapping of Tammy Sims and Bonita Callier.

Evid. R. 404(B) provides:

"Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident."

The rule is in accord with R.C. 2945.59. The issue of identity, although not listed in the statute, has been held to be included within the concept of scheme, plan, or system. *State* v. *Curry* (1975), 43 Ohio St. 2d 66, 73, 72 O.O. 2d 37, 41, 330 N.E. 2d 720, 725-726; Evid. R. 404(B) (Staff Note).

R.C. 2945.59 provides:

"In any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing an act is material, any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question may be proved, whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant."

Because R.C. 2945.59 and Evid. R.

404(B) codify an exception to the common law with respect to evidence of other acts of wrongdoing, they must be construed against admissibility, and the standard for determining admissibility of such evidence is strict. *State* v. *Burson* (1974), 38 Ohio St. 2d 157, 158-159, 67 O.O. 2d 174, 175, 311 N.E. 2d 526, 528; *State* v. *DeMarco* (1987), 31 Ohio St. 3d 191, 194, 31 OBR 390, 392, 509 N.E. 2d 1256, 1259. Neither the rule nor the statute contains the words "like" or "similar." The rule and statute contemplate acts which may or may not be similar to the crime at issue. If the other act does in fact "tend to show" by substantial proof any of those things enumerated, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident, then evidence of the other act may be admissible. *State* v. *Flonnory* (1972), 31 Ohio St. 2d 124, 126, 60 O.O. 2d 95, 96-97, 285 N.E. 2d 726, 729.

From the outset, appellant claimed that there was a mistaken identity because he allegedly was with someone else the night that Tryna died. The acts of September 18 and December 6, 1984 satisfy the preliminary requirements of admission of other acts because they share a "temporal, modal, and situational relationship with the acts constituting the crime charged * * *." *Burson, supra,* at 159, 67 O.O. 2d at 175, 311 N.E. 2d at 529. All three incidents occurred within a few months of each other, within a few miles of each other, and all involved young girls between the ages of eleven and fourteen walking along a street after dark. The method in all three incidents was identical: a lone driver in a car passed the victims, parked the car and then attacked them from behind, trying to get the victims into the car while using the same scurrilous language. Two of the incidents involved the same car and a knife. We view the evidence of the other incidents as admissible because it is relevant to the issue of appellant's defense of mistaken identity. As Chief Justice O'Neill explained in *Curry, supra*:

"* * * 'Scheme, plan or system' evidence is relevant in two general factual situations. First, those situations in which the 'other acts' form part of the *immediate* background of the alleged act which forms the foundation of the crime charged in the indictment. * * * To be admissible pursuant to this sub-category of 'scheme, plan or system' evidence, the 'other acts' testimony must concern events which are *inextricably related* to the alleged criminal act. * * *

"Identity of the perpetrator of a crime is the second factual situation in which 'scheme, plan or system' evidence is admissible. One recognized method of establishing that the accused committed the offense set forth in the indictment is to show that he has committed similar crimes within a period of time reasonably near to the offense on trial, and that a similar scheme, plan or system was utilized to commit both the offense at issue and the other crimes." (Emphasis added.) *Id.* at 73, 72 O.O. 2d at 41, 330 N.E. 2d at 725-726.

The evidence of other acts in this case comes under the second category noted in *Curry* since identity of the perpetrator of the rape and murder of Tryna Middleton was at issue. Cf. *State* v. *Eubank* (1979), 60 Ohio St. 2d 183, 186, 14 O.O. 3d 416, 418, 398 N.E. 2d 567, 569. Evidence of "other acts" is admissible if there is substantial proof that the alleged similar act was committed by defendant. *State* v. *Carter* (1971), 26 Ohio St. 2d 79, 55 O.O. 2d 130, 269 N.E. 2d 115,

paragraph two of the syllabus,[1] and if the evidence also tends to prove identity, scheme, motive or system. We hold that the state satisfied the requirements for admission of evidence of the September 18 and December 6, 1984 incidents as "other acts" under Evid. R. 404(B).

## B

In his second assignment of error, appellant, an indigent, contends that the trial court's refusal to appoint an eyewitness identification expert to aid his defense constituted a denial of due process. In addition, appellant claims the trial court misapplied the "reasonably necessary" standard in R.C. 2929.024, which requires the court to order the state to pay for "reasonably necessary" services.

The United States Supreme Court in *Ake* v. *Oklahoma* (1985), 470 U.S. 68, held that in a capital case where the defense is one of insanity, the state must provide expert psychiatric help in order to provide the indigent defendant with the basic tools for a defense. However, in *Caldwell* v. *Mississippi* (1985), 472 U.S. 320, the Supreme Court found no denial of due process when the state court refused to fund the hiring of various experts in a capital case. The court noted that the "petitioner offered little more than undeveloped assertions that the requested assistance would be beneficial * * *." *Id.* at 323-324, fn. 1.

"*Ake* and *Caldwell* taken together hold that a defendant must show more than a mere possibility of assistance from an expert. Rather, a defendant must show a reasonable probability that an expert would aid in his defense, and that denial of expert assistance would result in an unfair trial." *Little* v. *Armontrout* (C.A. 8, 1987), 835 F. 2d 1240, 1244. This court's interpretation of the standard to be used under R.C. 2929.024 comports with the above constitutional standard. In *State* v. *Jenkins* (1984), 15 Ohio St. 3d 164, 15 OBR 311, 473 N.E. 2d 264, paragraph four of the syllabus, this court stated:

"R.C. 2929.024 requires the court to provide an indigent defendant with expert assistance whenever, in the *sound discretion of the court,* the services are reasonably necessary for the proper representation of a defendant charged with aggravated murder. The factors to consider are (1) the value of the expert assistance to the defendant's proper representation at either the guilt or sentencing phase of an aggravated murder trial; and (2) the availability of alternative devices that would fulfill the same functions as the expert assistance sought." (Emphasis added.)

Expert testimony on eyewitness

---

[1] Chief Justice Rehnquist, writing for a unanimous court in *Huddleston* v. *United States* (1988), 485 U.S. ___, 99 L. Ed. 2d 771, 108 S. Ct. 1496, held that the trial court's determination of whether admission of other acts is unduly prejudicial turns upon consideration of whether the evidence is offered for a proper purpose (Fed. R. Evid. 404[b]), whether it is relevant (Fed. R. Evid. 402) (could the jury reasonably conclude that the other act occurred and that the defendant was the actor), whether the probative value of evidence of the other acts substantially outweighs the potential for unfair prejudice (Fed. R. Evid. 403), and whether the jury, upon request, is instructed that the evidence is to be considered only for the proper purpose for which it was admitted (Fed. R. Evid. 105). The standard of proof in federal civil and criminal cases for admission of "other acts" is merely one of sufficiency of evidence to support a finding by the jury that the defendant committed the other act.

identification may have been admissible. In *State* v. *Buell* (1986), 22 Ohio St. 3d 124, 131, 22 OBR 203, 209, 489 N.E. 2d 795, 803, certiorari denied (1986), 479 U.S. 871, this court stated: "[T]he expert testimony of an experimental psychologist concerning the variables or factors that may impair the accuracy of a *typical* eyewitness identification is admissible under Evid. R. 702." (Emphasis *sic.*) However, the opinion of an experimental psychologist is not admissible regarding the credibility of a *particular* witness unless there is some special identifiable need for the testimony such as a physical or mental impairment which would affect the witness' ability to observe or recall details. *Id.* at fn. 6. Where no such need is shown, we will not find an abuse of discretion by the trial court in denying the appointment of an expert on eyewitness identification pursuant to R.C. 2929.024, unless the defendant can make a showing of demonstrable prejudice, such as the need to impeach an eyewitness with physical or mental impairment. See *Ake, Caldwell,* and *Little, supra; United States* v. *Smith* (C.A. 6, 1984), 736 F. 2d 1103 (while evidence from eyewitness expert should have been admitted, refusal to do so was harmless error in light of other physical evidence and the three independent eyewitness identifications from lineups, which rebutted defendant's alibi). Appellant has not made the particularized showing that is necessary under the case law discussed above and his second proposition of law is denied. *State* v. *Henderson* (1988), 39 Ohio St. 3d 24, 528 N.E. 2d 1237.

## C

Appellant's third and tenth propositions of law contend that the identification testimony of Janet and Melinda Grissom should have been excluded because it was the product of an unnecessarily suggestive showup and that Tammy's identification of the appellant was also made under suggestive conditions.

We agree that the showup of the defendant at the hospital, where he was identified by the Grissoms, was both unnecessary and suggestive. "The practice of showing suspects singly to persons for the purpose of identification, and not as part of a lineup, has been widely condemned." *Stovall* v. *Denno* (1967), 388 U.S. 293, 302. Therefore, our concern with the reliability of the identification, deterrence of police misconduct, and the effect on the administration of justice requires us to examine the totality of the circumstances to determine whether the confrontation was so suggestive that there was " 'a very substantial likelihood of irreparable misidentification.' " *Neil* v. *Biggers* (1972), 409 U.S. 188, 198 (quoting *Simmons* v. *United States* [1968], 390 U.S. 377, 384). See, generally, *Manson* v. *Brathwaite* (1977), 432 U.S. 98, 111-113. The factors to consider are: (1) the opportunity of the witness to view the criminal at the time of the crime, (2) the witness' degree of attention, (3) the accuracy of the witness' prior description of the criminal, (4) the level of certainty demonstrated by the witness at the confrontation, and (5) the length of time between the crime and the confrontation. *Id.* at 114.

All five factors were favorable in this case. Both Grissoms had ample time to view appellant, and their attention was completely focused as the mother tried to rescue her daughter. The descriptions given to the police prior to the confrontation matched the appellant. Finally, the identification was emphatically positive, and it occurred very shortly after the crime.

While Tammy initially expressed some doubt she nevertheless picked

the appellant from a photo array and from a lineup which was not conducted in a suggestive manner. Tammy also identified the defendant in court. The third and tenth propositions of law are therefore overruled.

D

Appellant argues in his fourth proposition of law that he was not advised of his *Miranda* rights, and that all statements he may have made were involuntary and the result of coercion. It is well-established that "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." *Miranda* v. *Arizona* (1966), 384 U.S. 436, 444.

Appellant had been arrested and was in custody for the Grissom incident. Appellant testified at the suppression hearing that at the time of the December 17, 1984 questioning about the Middleton incident, counsel had been retained to represent him in the Grissom case. However, the record reveals that appellant's father testified that he did not retain any counsel until appellant's first court appearance in January. On December 17, adversarial proceedings had not commenced against the appellant with respect to the Grissom or Middleton incidents. Accordingly, no Sixth Amendment right to counsel had attached for those crimes. *Kirby* v. *Illinois* (1972), 406 U.S. 682. However, since appellant was in custody, his Fifth Amendment right to counsel to aid against self-incrimination had attached with respect to both crimes. *Edwards* v. *Arizona* (1981), 451 U.S. 477, 482.

Under either Fifth Amendment or Sixth Amendment analysis, once an accused has invoked a right to counsel, the state must cease all questioning unless counsel is present. *Edwards, supra.* Police cannot *initiate* further questioning of an accused in custody on the crime at issue or other crimes even if the accused is given *Miranda* warnings. *Id.* at 484-485; *Arizona* v. *Roberson* (1988), 486 U.S. ___, 100 L. Ed. 2d 704, 108 S. Ct. 2093; *Michigan* v. *Jackson* (1986), 475 U.S. 625. Furthermore, "[t]he Sixth Amendment protects the right of the accused not to be confronted by an agent of the State regarding matters as to which the right to counsel has attached without counsel being present." *Maine* v. *Moulton* (1985), 474 U.S. 159, 178, fn. 14.

Our inquiry then is limited to whether appellant was given his *Miranda* warnings and whether he waived his Fifth Amendment rights with "a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it." *Moran* v. *Burbine* (1986), 475 U.S. 412, 421. The state need only prove waiver by a preponderance of the evidence. *Colorado* v. *Connelly* (1986), 479 U.S. 157.

There was conflicting testimony at the suppression hearing. Detective Svekric testified that on December 17, 1984, prior to interrogation, appellant was advised of his rights, although police did not obtain a written waiver. The appellant was removed from his cell at about 4:30 p.m. and returned at 5:00 p.m. after the lineups. He was questioned around 10:00 p.m. by several detectives. Appellant did not ask to see a lawyer, but did ask to call his father. The file concerning the stabbing death of appellant's sister was read by officers and discussed with appellant. Appellant's father arrived after midnight and talked with his son, who then told police that he did not want to say anything further. The interrogation ended around 2:00 a.m. Appellant claims that he was denied

his dinner, although he does not claim that he complained of this at the time. Detective Svekric testified that he did not know whether appellant had eaten. Appellant also claims that he was not read his *Miranda* rights that night, although he did admit that he had been read his rights when he was first arrested. He claims he was refused an attorney when he asked for one, and was abusively questioned by multiple parties until 4:45 a.m. The appellant first mentioned his sister and stated that they were not close. It is undisputed that appellant's father was called and came, and talked with appellant.

There is nothing in the record to indicate that the trial court abused its discretion in accepting the testimony of Detective Svekric rather than that of the appellant who contradicted himself during his testimony. Under the totality of the circumstances test set forth in *State* v. *Edwards* (1976), 49 Ohio St. 2d 31, 3 O.O. 3d 18, 358 N.E. 2d 1051, paragraph two of the syllabus, vacated in part on other grounds (1978), 438 U.S. 911, appellant's statements were admissible. Thus, we reject this assignment of error.

### E

In his fifth, ninth and fourteenth propositions of law appellant alleges prosecutorial misconduct. The fifth proposition concerns statements made during voir dire. This proposition was not argued in the court of appeals. However, similar statements asked during voir dire were held not to constitute error in *State* v. *Jester* (1987), 32 Ohio St. 3d 147, 154, 512 N.E. 2d 962, 970, certiorari denied (1988), 484 U.S. ____, 98 L. Ed. 2d 871, 108 S. Ct. 785. Likewise, we find no plain error here.

The ninth proposition concerns several comments made in the prosecutor's closing remarks.[2] Generally, parties have been granted wide latitude in closing arguments. *State* v. *Maurer* (1984), 15 Ohio St. 3d 239, 269, 15 OBR 379, 404-405, 473 N.E. 2d 768, 794-795; *State* v. *Brown* (1986), 38 Ohio St. 3d 305, 528 N.E. 2d 523. Although we can hardly approve of comments such as, "He kills in the community and it's going to go on and on and on," they do not constitute a denial of due process. See *Darden* v. *Wainwright* (1986), 477 U.S. 168. A complete review of the prosecutor's closing remarks belies the conclusion that the state's improper arguments in any way affected the jury's verdict. Cf. *State* v. *Smith* (1984), 14 Ohio St. 3d 13, 14 OBR 317, 470 N.E. 2d 883 (reversing because it was not clear beyond a reasonable doubt that, absent the prosecutor's comments, the jury would have found defendant guilty).

---

[2] The prosecutor's closing remarks contained the following comments: "You saw the photos of that little girl. You will never see Tryna Middleton again."

"He killed the little girl, and he probably would have killed the mother and father. He kills in the community, and it's going to go on and on and on."

"But Tryna Middleton is not alive. Tryna Middleton does not have the most precious thing that we all have, that is life and the hopes of someday being a woman and having a family and all those things that one goes through. And because of him, she can't have that."

"We had the FBI cooperating to their fullest. Why? Because Miss [*sic*] Middleton [the decedent's mother] had been on the staff for 19 years. Firstly, obviously, they had the jurisdiction to enter the case. But beyond that, out of their knowledge of her and the kind of person she was, and out of their love if you will for her, they came into the case and committed all that they had at their disposal and that is significant."

Appellant also contends in his fourteenth proposition of law that five of the prosecutor's comments during the mitigation phase denied him a fair trial.[3] Comments one, three, four and five are addressed by our discussion of propositions of law nine and seventeen. However, comment two requires further analysis.

At the time of the prosecutor's comments concerning the appellant's unsworn statement, this court had held that "* * * the prohibition of *Griffin* v. *California* (1965), 380 U.S. 609, against prosecutorial comment on the defendant's failure to testify does not extend to an unsworn statement during the sentencing phase." *State* v. *Mapes* (1985), 19 Ohio St. 3d 108, 116, 19 OBR 318, 324-325, 484 N.E. 2d 140, 147, certiorari denied (1986), 476 U.S. 1178. See, also, *Jenkins, supra,* at 217, 15 OBR at 356-357, 473 N.E. 2d at 309-310.

However, in the recent case of *State* v. *DePew* (1988), 38 Ohio St. 3d 275, 528 N.E. 2d 542, this court limited the scope of the prosecutor's remarks concerning the unsworn statement of a defendant that is permitted at the mitigation trial pursuant to R.C. 2929.03(D)(1). Such comments should be limited to noting that "the defendant's statement has not been made under oath or affirmation * * * in contrast to the testimony of all other witnesses." *DePew, supra,* at 285, 528 N.E. 2d at 554. The comments at issue,

like those in *DePew,* exceed this narrowed scope. However, we believe that the totality of the prosecutor's remarks is harmless error in light of the overwhelming nature of the aggravating circumstances compared to the mitigation factors. Appellant's fifth, ninth and fourteenth propositions of law are overruled.

F

In the sixth proposition of law, the appellant claims that he was denied due process in violation of the Sixth and Fourteenth Amendments when his challenge for cause of a juror was denied by the trial court. The appellant used his fifth peremptory challenge to exclude that juror. Subsequently, both parties passed the jury for cause with the state then exercising five peremptory challenges and the appellant exercising six peremptory challenges. In this case, the court allowed both the state and the defendant twelve peremptory challenges. With six challenges left, the appellant approved the jury selected.

The relevant inquiry in this situation is " 'whether the composition of the *jury panel as a whole* could possibly have been affected by the trial court's error.' " (Emphasis *sic.*) *Gray* v. *Mississippi* (1987), 481 U.S. 648, 665 (quoting *Moore* v. *Estelle* [C.A. 5, 1982], 670 F. 2d 56, 58, certiorari denied [1982], 458 U.S. 1111). In *Ross* v. *Oklahoma* (1988), 487 U.S. ___, 101

---

[3] Some of the comments complained of in the fourteenth proposition of law are:

(1) "He served nine years for being involved with a little girl."

(2) "In the light of that, the man took the stand and said in an unsworn statement, and as you were told, there was no opportunity to cross-examine him in his unsworn statement."

(3) The prosecutor, over objection, informed the jury that the court would im-

pose the penalty, the jury would recommend it.

(4) "Do not be intimidated, do not think that this is death or life and that is all there is. Think of Tryna Middleton, think of Tryna Middleton's parents."

(5) "You heard him tell you he was involved with a little girl. He said he served nine years. Now, he is telling you 'Send me back for 20 years, so I can come back and do it again.' "

L. Ed. 2d 80, 108 S. Ct. 2273, the Supreme Court further explained that any claim that the jury was not impartial is not focused on the juror excused by the exercise of the peremptory challenge, but rather is focused on the jurors who ultimately sat. Therefore, in order to state a constitutional violation in this situation, the defendant must use all of his peremptory challenges and demonstrate that one of the jurors seated was not impartial. Unless a juror is challenged for cause, he is presumed to be impartial. Even if the court erred in denying the appellant's motion, appellant has not been denied a right to an impartial jury, nor has he been deprived of his right to due process in this context by being "forced" to use a peremptory challenge.

## G

Appellant, in his seventh proposition of law, contends that denial of his motion for a continuance denied him a fair trial since "[i]t is a basic due process right and indeed essential to a fair trial that a defense counsel be afforded the reasonable opportunity to prepare his case." *State* v. *Sowders* (1983), 4 Ohio St. 3d 143, 144, 4 OBR 386, 387, 447 N.E. 2d 118, 120. However, we have repeatedly stated that it is within the sound discretion of the court whether to grant a motion for a continuance. See, *e.g.*, *State* v. *Bayless* (1976), 48 Ohio St. 2d 73, 101, 2 O.O. 3d 249, 264, 357 N.E. 2d 1035, 1053, vacated in part on other grounds (1978), 438 U.S. 911. Obviously, not every denial of a continuance constitutes a denial of due process. *Ungar* v. *Sarafite* (1964), 376 U.S. 575, 589. On review we must look at the facts of each case and the defendant must show how he was prejudiced by the denial of the continuance before there can be a finding of prejudicial error. *State* v. *Kehn* (1977), 50 Ohio St. 2d 11,

15, 4 O.O. 3d 74, 76, 361 N.E. 2d 1330, 1333, certiorari denied (1977), 434 U.S. 858.

The trial was originally scheduled to commence on July 8, 1985, then continued to August 19. Original retained defense counsel withdrew and on July 26, 1985, newly appointed counsel requested a continuance. The court granted a continuance and set the trial date for September 16, 1985, but indicated at that time that the trial date was firm. Nevertheless, defense counsel filed another motion on September 5 for a continuance of an indeterminate length.

Defense counsel for the first time then argued that the approaching Jewish holidays might affect the composition of the jury and the amount of time for trial preparation available to some members of the defense team. The court stated that neither the defendant nor the two principal defense attorneys were Jewish and that the court would accommodate any Jewish jurors if necessary. Defense counsel also argued that they had had difficulty obtaining mitigation records and establishing a relationship with the defendant. However, the record is silent on whether they were in fact unable to obtain any records for the mitigation hearing. The balancing of the competing interests required by *Ungar* and *Sowders, supra,* results in the conclusion that the appellant was not denied due process when his motion for a continuance was denied.

## H

In his eighth proposition of law, appellant objects to the admission of Tryna's mother's testimony, claiming that it was irrelevant and unduly prejudicial. Appellant did not object at trial nor did he raise this proposition in the court of appeals; therefore, only if admission of Mrs. Middleton's testimony

was plain error may we take notice of it.

Appellant argues that the mother's testimony is akin to a victim impact statement, which has been held to be inadmissible because it or similar evidence is irrelevant and inflames the passions of the jury. *Booth* v. *Maryland* (1987), 482 U.S. ___, 96 L. Ed. 2d 440, 107 S. Ct. 2529; see, also, *State* v. *White* (1968), 15 Ohio St. 2d 146, 151, 44 O.O. 2d 132, 135, 239 N.E. 2d 65, 70.

The mother's brief testimony was relevant to the prosecution of the five counts of the indictment although it did not prove any of the elements of the crimes involved. Her testimony regarding when she last saw the victim, what clothing the victim was wearing, how the FBI became involved, and what she did upon notification of the crime, assisted the jury in understanding other evidence that was presented. References to the victim's family members were minimal and not emotional. Accordingly, the testimony's relevance was not outweighed by its prejudicial effect, if any. It was obviously not plain error to admit it.

## I

Appellant, in his eleventh and twelfth propositions of law, challenges the refusal of the trial court to give two instructions: one on eyewitness identification and one on lesser included offenses. The court's instruction regarding credibility of witnesses included the substance of the proposed instruction requested by appellant, which is all that is required. *State* v. *Nelson* (1973), 36 Ohio St. 2d 79, 65 O.O. 2d 222, 303 N.E. 2d 865, paragraph one of the syllabus. See, also, *State* v. *Guster* (1981), 66 Ohio St. 2d 266, 20 O.O. 3d 249, 421 N.E. 2d 157; *State* v. *Caldwell* (1984), 19 Ohio App. 3d 104, 19 OBR 191, 483 N.E. 2d 187.

Appellant also requested an instruction on the lesser included offenses of murder and voluntary manslaughter. A trial court must charge a jury on a lesser included offense when the evidence warrants such an instruction. *Hopper* v. *Evans* (1982), 456 U.S. 605. See *State* v. *Muscatello* (1978), 55 Ohio St. 2d 201, 9 O.O. 3d 148, 378 N.E. 2d 738.

Appellant argues that there is only circumstantial evidence of the rape, of when the murder occurred, and of whether the kidnapper is the same person as the rapist and/or murderer. Furthermore, appellant argues that "the jury could have found that provocation existed. It is known that a fight ensued after the kidnap." These arguments are not supported by any facts in the record. The suggestion of provocation is not even colorable. Cf. *Muscatello, supra.* See *State* v. *Spisak* (1988), 36 Ohio St. 3d 80, 82, 521 N.E. 2d 800, 802, at fn. 1.

The jury could not have reasonably found that the murder was not committed while committing, attempting to commit, or while fleeing after committing or attempting to commit kidnapping or rape. The evidence of kidnapping and rape is overwhelming and the law is clear that an instruction must be consistent with the facts presented in evidence. *State* v. *Parra* (1980), 61 Ohio St. 2d 236, 51 O.O. 3d 251, 400 N.E. 2d 885. Accordingly, the trial court properly refused Broom's request for jury instructions on lesser included offenses of murder and voluntary manslaughter. *Jenkins, supra,* at 219, 15 OBR at 358, 473 N.E. 2d at 311.

## J

Appellant argues, in his thirteenth and eighteenth propositions of law, that kidnapping and rape are allied offenses of similar import under R.C.

2941.25(A), so that he can be convicted of only one or the other and that, therefore, he should have been convicted of only one aggravating circumstance pursuant to R.C. 2929.04 (A)(7).

Under the circumstances of this case the kidnapping and rape of Tryna Middleton were offenses committed with separate animuses. The restraint and asportation of the victim at knifepoint, in a car, to a location over a mile away can hardly be considered as merely incidental to the rape and murder of the victim. *State* v. *Logan* (1979), 60 Ohio St. 2d 126, 14 O.O. 3d 373, 397 N.E. 2d 1345, syllabus. These propositions of law are without merit.

### K

In his fifteenth proposition of law, appellant argues that he was denied a fair trial because the state on cross-examination of appellant's father was allowed to impeach that witness' credibility by showing that the father did not consider any of appellant's previous prior convictions as "trouble."[4] The court denied Broom's motion for a mistrial and the court gave a general instruction on the tests of truthfulness that jurors apply in their daily lives. Appellant neither objected to the instruction that was given nor requested a limiting instruction.

Romell Broom's father was a character witness for his son. "[I]ntroduction by a defendant of a character witness' testimony 'opens a veritable Pandora's box.' " *State* v. *Elliott* (1971), 25 Ohio St. 2d 249, 254, 54 O.O. 2d 371, 373-374, 267 N.E. 2d 806, 809, vacated in part on other grounds (1972), 408 U.S. 939 (quoting *Michelson* v. *United States* [1948], 335 U.S. 469, 480). See, also, *State* v. *Pigott* (1964), 1 Ohio App. 2d 22, 30 O.O. 2d 56, 197 N.E. 2d 911; *State* v. *Sims* (1981), 3 Ohio App. 3d 321, 3 OBR 375, 445 N.E. 2d 235; Evid. R. 404(A).

It was not error to allow the impeachment of appellant's father. Even if it was error to fail to give a limiting instruction, such error was harmless in light of the fact that Broom admitted in his voluntary statement to the jury that he had "been convicted before, and I did nine years for being involved with a young girl." See *Pigott, supra,* paragraph four of the syllabus (failure to instruct on "other crimes" constitutes error but is cured when defendant admits committing them). *Chapman* v. *California* (1967), 386 U.S. 18, 24.

### L

Appellant's sixteenth proposition of law contends that the state's use of the additional crimes of rape and kid-

---

[4] During the course of his direct examination of William Broom, appellant's father, *defense counsel* asked:

"Now, during the 16 years that you worked at Ford, have you ever had any problems with Romell at all?"

The witness answered:
"No. Maybe he might skip school or something like that."

After a sidebar conference and over objection of defense counsel, the following questions were asked on cross-examination of William Broom:

"Q: Calling your attention to June 27,

1975, do you consider a plea of guilty to robbery to be trouble?
"A: No.
"* * *

"Q: Calling your attention to June 27th of 1975, do you consider rape to be trouble?
"* * *
"A: No.
"* * *

"Q: Okay. Calling your attention to April 2nd of 1975, a plea of guilty to aggravated robbery, do you consider that to be trouble to you?
"* * *
"A: No."

napping as aggravating circumstances, R.C. 2929.04(A)(7), in the capital prosecution of a felony murder fails to narrow the class of death-eligible offenders as required in *Zant* v. *Stephens* (1983), 462 U.S. 862. Appellant's argument is not well-taken since R.C. 2929.04(A)(7) requires that "* * * an additional fact, independent of the elements of aggravated murder, be proven before an offender is eligible for capital punishment. * * * By such a limitation, the category of death-eligible aggravated murderers is narrowed in compliance with *Zant* and no constitutional violation arises." *State* v. *Barnes* (1986), 25 Ohio St. 3d 203, 207, 25 OBR 266, 269, 495 N.E. 2d 922, 925, certiorari denied (1987), 480 U.S. 926.

## M

Appellant's seventeenth proposition of law alleges that the trial court's instruction and the prosecutor's arguments to the jury violated the constitutional standard set forth in *Caldwell* v. *Mississippi, supra.* In *Caldwell,* the court held that:

"* * *[I]t is constitutionally impermissible to rest a death sentence on a determination made by a sentencer who has been led to believe that the responsibility for determining the appropriateness of the defendant's death rests elsewhere." *Id.* at 328-329.

In closing argument in the penalty phase of the trial, defense counsel stated, "I am now to do what the law requires me to do, by leaving the question [of Romell Broom's guilt] behind and shifting the focus of my presentation to the reasons *why you should not vote to kill my client.*" Later, defense counsel argued that "[T]he question that ultimately we have to deal with, is

*why should you kill Romell Broom,* because that is really what we are getting down to here?" (Emphasis added.)

Earlier the prosecutor had told the jurors that if they determined that the aggravating circumstances sufficiently outweigh the mitigating factors, then they were "duty bound to recommend to the Court the sentence of death." In summation, the prosecutor responded to the defendant's counsel's arguments in a measured way by stating: "And in following the law, I trust and know in your good judgment that you will follow the law and you will return the one and only verdict that you can with [sic] its perimeters, and that verdict is the recommendation of the imposition of the death penalty."

The court correctly stated the law in Ohio when it instructed the jury that if they found that the aggravating circumstances outweigh the mitigating factors by proof beyond a reasonable doubt then they "have no choice and must recommend to the Court that the sentence of death be imposed upon the Defendant, Romell Broom." R.C. 2929.03(D)(2). There was no instruction that recommendation of death was *not* binding on the court, although there was an instruction that a recommendation of a life sentence would be binding on the court.

This court has repeatedly emphasized its preference that no comment whatsoever be made on the question of whether the jury or the trial court ultimately determines the sentence. *Henderson, supra,* at 30, 528 N.E. 2d at 1243. Nevertheless, this court has previously held that explicit statements that the jury's determination is advisory and not binding upon the court may be harmless error.[5]

---

[5] The court notes that oral arguments have been heard in the case of *Dugger* v. *Adams* (No. 87-121), certiorari granted

(1988), 485 U.S. ___, 99 L. Ed. 2d 267, 108 S. Ct. 1106 (case below, *Adams* v. *Wainwright* [C.A. 11, 1986], 804 F. 2d 1526;

*Buell, supra; State* v. *Williams* (1986), 23 Ohio St. 3d 16, 23 OBR 13, 490 N.E. 2d 906; *State* v. *Rogers* (1986), 28 Ohio St. 3d 427, 28 OBR 480, 504 N.E. 2d 52.

The jury instructions and the prosecutorial remarks did not specifically refer to the jury verdict as merely advisory, nor did they emphasize or even mention the appellate process mandated under Ohio law should the jury recommend the sentence of death. Cf. *Caldwell* v. *Mississippi, supra.* It is our view that the statements at issue in this case did not so diminish the jury's sense of responsibility for its decision so that an impermissible likelihood arose that the jury was biased in favor of imposing the death sentence. Accordingly, we hold that the jury was not led to believe that the responsibility for determining the propriety of the defendant's death rested elsewhere. Appellant's seventeenth proposition of law is overruled.

## N

In his nineteenth proposition of law, appellant contends the trial court improperly considered four subjective factors in its independent review of the case pursuant to R.C. 2929.03(F): the heinousness of the crime, the multiplicity of crimes, the gruesomeness of the photographs, and the nature and circumstances of the crime.

It would be illogical to require a trial court to consider the nature and circumstances of the offense in reaching a decision and yet preclude the court from citing such nature and circumstances for its decision. *State* v. *Stumpf* (1987), 32 Ohio St. 3d 95, 99, 512 N.E. 2d 598, 604, certiorari denied (1988), 484 U.S. ____, 98 L. Ed. 2d 1022, 108 S. Ct. 1060. It is necessary for effective appellate review and, indeed, it is required by R.C. 2929.03(F), that a court set forth its reasons "why the aggravating circumstances the offender was found guilty of committing were sufficient to outweigh the mitigating factors." A review of Judge Matia's opinion reveals that he properly weighed the mitigating and aggravating factors.[6]

---

*Adams* v. *Dugger* [C.A. 11, 1987], 816 F. 2d 1493). In that case the United States Supreme Court will consider whether a legally correct jury instruction that the court, and not the jury, was responsible for sentencing would pass muster under *Caldwell* v. *Mississippi.* In *Adams,* the Eleventh Circuit analyzed the Florida sentencing scheme which, like Ohio's, separates the determination of guilt from a sentencing proceeding where the jury weighs the aggravating and mitigating circumstances in rendering a sentence. The Florida trial judge, as in Ohio, then independently weighs the aggravating and mitigating circumstances.

However, in finding a violation of the Eighth Amendment the court of appeals pointed out that a Florida judge is not to override the jury unless the facts are "so clear and convincing that virtually no reasonable person could differ." *Adams* v. *Wainwright, supra,* at 1529 (quoting *Tedder* v. *State* [Fla. 1975], 322 So. 2d 908, 910). In Ohio, the trial court must independently evaluate the mitigating and aggravating factors. R.C. 2929.04. Even more important, a Florida judge apparently can override a jury recommendation of life sentence and impose the sentence of death. *Adams* v. *Wainwright, supra,* at 1528. Under the Ohio scheme, the court is bound by a jury recommendation of a life sentence. A defendant in Ohio cannot be sentenced to death without the recommendation of the jury. R.C. 2929.03(D)(2).

[6] The trial judge did not specifically cite the circumstances of the crime as specific aggravating factors in reaching his conclusion that the penalty of death was appropriate in this case.

## O

In his twentieth proposition of law the appellant broadly attacks the constitutionality of the Ohio death penalty statutes in order to preserve this issue for later review. However, we hold that the death penalty statutes are constitutional for the reasons set forth in *State* v. *Jenkins, supra; State* v. *Maurer, supra;* and *State* v. *Buell, supra.*

## P

In his twenty-first proposition of law, appellant asserts that he was denied effective assistance of counsel because various propositions of law raised in this appeal were not raised in the appeal below. Lawyers are necessities in a criminal trial, and a defendant is entitled to effective assistance of counsel on appeal. *Evitts* v. *Lucey* (1985), 469 U.S. 387. In order to establish a claim of ineffective assistance of counsel, a defendant must demonstrate that counsel's performance fell "below an objective standard of reasonableness" and that counsel's errors in judgment in failing to raise certain issues on appeal were "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland* v. *Washington* (1984), 466 U.S. 668, 687-688. We have examined the issues that were omitted below, but were raised in this appeal (propositions of law five, six, eight, thirteen, fourteen, sixteen, eighteen, and nineteen). We reject the claims made in these pro-

positions of law. Appellant therefore cannot demonstrate the prejudice requirement of *Strickland.* We find no merit in appellant's twenty-first proposition of law.

## Q

In his twenty-second proposition of law, appellant argues that R.C. 2945.33 and Crim. R. 24(G)(2)(c)[7] mandate that a jury remain sequestered between the conclusion of the guilt phase of the trial and the commencement of the penalty phase. In this case the jury was allowed to separate during the six-day interval between the two phases. We have previously held that jurors need not be sequestered during this interval unless the trial court in its discretion determines that sequestration is necessary to avoid jury contamination. There is nothing in the record to suggest that situation. *Jenkins, supra; Maurer, supra.* Therefore, the twenty-second proposition of law is without merit.

## R

The last two of the twenty-four propositions of law were filed *pro se* by the appellant. In the first, he contends he was denied his Sixth Amendment rights when he did not have counsel present at the lineups. Appellant was in custody for the Grissom incident at the time that Tammy and Bonita independently picked him out of a lineup.

The Sixth Amendment right to counsel attaches only when adversarial proceedings are initiated against an in-

---

[7] R.C. 2945.33 provides in part:

"In cases where the offense charged may be punished by death, after the case is finally submitted to the jury, the jurors shall be kept in charge of the proper officer and proper arrangements for their care and maintenance shall be made as under section 2945.31 of the Revised Code."

Crim. R. 24(G)(2)(c) provides:

"After submission of a capital case to the jury, the jury shall remain under the supervision of an officer of the court until a verdict is rendered or the jury is discharged by the court."

dividual for a particular incident by way of indictment, information, arraignment, or preliminary hearing. *Kirby* v. *Illinois, supra; United States* v. *Wade* (1967), 388 U.S. 218. This rule applies even if the suspect is already in custody for a different crime. *United States* v. *Gouveia* (1984), 467 U.S. 180.

Adversarial proceedings had not been initiated against the appellant for the Middleton incident. The pre-indictment lineup was merely investigative, in contrast to a post-indictment lineup which is used as a means of preparing an identification witness to testify at trial. This proposition of law is without merit.

### S

In the appellant's second *pro se* proposition of law he contends that there was insufficient evidence to support his conviction. Construing the evidence in this case "in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crimes beyond a reasonable doubt." (Emphasis *sic.*) *Jackson* v. *Virginia* (1979), 443 U.S. 307, 319. Appellant's conviction is supported by overwhelming evidence, and this proposition of law is without merit.

### II

We must next independently determine whether the aggravating circumstances outweigh the mitigating factors in this case as required by R.C. 2929.05(A). The aggravating circumstances are that the appellant was found guilty of one count of aggravated murder with two capital punishment specifications — kidnapping and rape.

R.C. 2929.04(B) sets forth seven factors to be considered in mitigation of the death penalty:

"(1) Whether the victim of the offense induced or facilitated it;

"(2) Whether it is unlikely that the offense would have been committed, but for the fact that the offender was under duress, coercion, or strong provocation;

"(3) Whether, at the time of committing the offense, the offender, because of a mental disease or defect, lacked substantial capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law;

"(4) The youth of the offender;

"(5) The offender's lack of a significant history of prior criminal convictions and delinquency adjudications;

"(6) If the offender was a participant in the offense but not the principal offender, the degree of the offender's participation in the offense and the degree of the offender's participation in the acts that led to the death of the victim;

"(7) Any other factors that are relevant to the issue of whether the offender should be sentenced to death."

There is nothing in the record to invoke the mitigating factors listed in numbers one, two, or six. With respect to item three, a defense witness testified that appellant was a good student at Airco Technical Institute. We find no evidence to suggest that appellant lacked capacity to appreciate the criminality of his actions. The appellant was twenty-eight at the time of the murder, so factor four does not apply either. Nor does the fifth factor apply since appellant's prior criminal convictions are significant in number and seriousness.

Finally, with regard to the seventh factor, testimony revealed that appellant's home life was less than ideal while he was growing up. However, there is no evidence to suggest that the childhood of the appellant differed in any respect from those of millions of other people who do not commit the kinds of heinous acts of which the ap-

pellant has been found guilty. Balancing the aggravating factors in this case against the minimal evidence of mitigation, we conclude that the aggravating circumstances clearly outweigh the mitigating factors beyond a reasonable doubt.

## III

Finally, we must consider the proportionality of a sentence of death in this case. A review of cases in which the death penalty has been upheld indicates that the sentence imposed in this case is neither excessive nor disproportionate. *State* v. *Buell, supra; State* v. *Maurer, supra.*

In conclusion, we find that there is no merit to the issues raised by the appellant concerning the proceedings below, the aggravating circumstances are not mitigated by the factors presented by the appellant, and the sentence of death is neither excessive nor disproportionate in this case.

Accordingly, the judgment of the court of appeals is affirmed.

*Judgment affirmed.*

MOYER, C.J., SWEENEY, LOCHER, HOLMES, DOUGLAS and H. BROWN, JJ., concur.

