OPINION
Appellant Yusef Brown-Austin is appealing his conviction, in the Stark County Court of Common Pleas, for one count of murder. The following facts give rise to this appeal.
In December, 1996, the Stark County Grand Jury indicted appellant with one count of murder, for the murder of Carlos Brown. In the early morning hours of October 14, 1995, Canton City Police Officers discovered Brown's body, in his vehicle, at the Waterworks Park, in Canton. The vehicle was in the weeds, off the road, with its hazard lights on. An autopsy later revealed that Brown died as a result of blunt force trauma to his body. Brown suffered eight fractured or broken ribs, contusions of the upper and lower lobe of the left lung and a rupture of the left and right ventricles of his heart.
The police had no immediate suspects for the murder. However, in June of 1996, police traveled to a state prison to question appellant about his knowledge of the murder. Appellant indicated, in a letter he mailed to the Canton Police Department, that he had details about the murder and wanted to cooperate with the police in exchange for early release from prison. When the officers interviewed appellant, at the prison, he declined to give the officers a taped statement, but did provide officers with details regarding the murder. Appellant provided no names of witnesses and claimed he was the only eyewitness to the murder.
Due to the fact that appellant gave no names of other eyewitnesses to the murder, the police could not corroborate his story and were therefore, unwilling to arrange an early release from prison in exchange for this information. In October of 1996, appellant mailed another letter to the Canton Police Department in which he threatened to go to the local newspapers and Brown's family with the story that he provided the police with valuable information about Brown's death and police were doing nothing in response. Upon receipt of this letter, the police arranged another meeting with appellant.
At this second interview, appellant again declined to give a taped statement, but did add the names of other eyewitnesses to corroborate his story that Pierre Williams bludgeoned Brown with a sledge hammer. The police interviewed these eyewitnesses and all informed them that Pierre Williams killed Carlos Brown. Following these interviews, Tessica Pryor came forward and told police that appellant killed Brown, not Pierre Williams. Pryor told police she was at the Brown-Austin residence the night of the murder. Pryor observed Carlos Brown and appellant exchange some words. Appellant went back into the residence for several minutes, only to return outside to continue his conversation with Brown. Pryor noticed that appellant had changed his shoes when he went inside. Appellant changed into steel-toed boots.
In the middle of their conversation, appellant told Brown to wait a minute, after which, appellant immediately hit Brown in the face knocking him to the ground. Brown fell down a flight of stairs from the porch. Appellant and David Dabney immediately began to stomp and kick Brown. Pryor estimated that the beating lasted approximately three to five minutes. About fifteen or twenty minutes later, appellant instructed his relatives to get rid of Brown's body. Pryor, Lalita Brown-Austin and Toni Brown-Austin drove Brown's body, in his vehicle, to the Waterworks Park. Upon returning to the Brown-Austin residence, they burned their gloves and Brown's personal effects and washed the blood from the driveway.
With this information from Pryor, the police reinterviewed the eyewitnesses. The eyewitnesses recanted their prior statements and corroborated Pryor's version of the events that evening. The eyewitnesses also informed police that appellant told them to lie to the police in order to frame Pierre Williams. The police interviewed appellant a third time. This interview was tape recorded and appellant continued to assert that Pierre Williams killed Carlos Brown.
Prior to the commencement of appellant's trial, appellant filed a pretrial motion seeking to prevent the introduction of "other acts" evidence. Appellant specifically sought to preclude evidence of appellant's prior acquittal for murder. The state's position was that it did not intend to introduce any evidence relative to this prior murder or the prosecution of appellant for the killing. Appellant also sought the preclusion of certain other "other acts" evidence relative to appellant's alleged gang affiliation. This evidence was contained in three letters appellant sent to his cousin. The trial court, while ordering the redaction of some material in the letters, overruled appellant's motion in limine relative to the gang references in the letters.
This matter proceeded to trial on March 24, 1997. The jury, following deliberations, found appellant guilty of the charged offense of murder. The trial court sentenced appellant to an indeterminate term of incarceration of fifteen years to life imprisonment. The trial court further ordered that appellant spend each October 14, the anniversary of Brown's death, in solitary confinement.
Appellant timely filed his notice of appeal and sets forth the following assignments of error for our consideration:
 I. THE TRIAL COURT ERRED IN PERMITTING THE PROSECTOR TO ARGUE AND PRESENT EVIDENCE REGARDING APPELLANT'S PRIOR BAD ACTS.
 II. THE STATE OF OHIO'S CONDUCT DURING TRIAL CONSTITUTES PROSECUTORIAL MISCONDUCT.
 III. OTHER ERRORS WERE COMMITTED AT TRIAL NOT RAISED HEREIN BUT APPARENT ON THE RECORD.
 I
Appellant maintains, in his first assignment of error, that the trial court erred in permitting the state to introduce evidence of prior bad acts. We disagree.
In support of this assignment of error, appellant cites to the prosecutor's allegations concerning gang activity and other bad acts. Appellant does not specify these "other bad acts." The issue of other acts evidence is governed by Evid.R. 404(B) and R.C. 2945.59. Evid.R. 404(B) provides as follows:
 (B) Other Crimes, Wrongs or Acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
This rule was codified in R.C. 2945.59, which provides:
 In any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system of doing an act is material, any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question may be proved, whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant.
In State v. Broom (1988), 40 Ohio St.3d 277, the Ohio Supreme Court addressed Evid.R. 404(B) and R.C. 2945.59 and explained:
 Because R.C. 2945.59 and Evid.R. 404(B) codify an exception to the common law with respect to evidence of other acts of wrongdoing, they must be construed against admissibility, and the standard for determining admissibility of such evidence is strict. [Citations omitted.] Neither the rule nor the statute contains the words "like" or "similar." The rule and statute contemplate acts which may or may not be similar to the crime at issue. If the other act does in fact "tend to show" by substantial proof any of those things enumerated, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident, then evidence of the other act may be admissible. Id. at 281-282.
Thus, "[e]vidence of `other acts' is admissible if there is substantial proof that the alleged similar act was committed by defendant * * * and if the evidence also tends to prove identity, scheme, motive or system." Id. at 282-283.
We find the trial court properly admitted evidence concerning appellant's gang activity because appellant attempted to frame Pierre Williams, with the help of other gang members, because Williams betrayed appellant and the gang. The letters appellant mailed from prison contained repeated gang references and outlined the plan to gain revenge against Williams and secure appellant's release from prison. Clearly, this evidence is closely interwoven into the background and circumstances of this crime and therefore, is admissible pursuant to Evid.R. 404(B) and R.C. 2945.59.
Appellant also argues that even if this evidence is admissible under Evid.R. 404(B) and R.C. 2945.59, it nonetheless is inadmissible under Evid.R. 403 because it does not qualify as relevant evidence. Evid.R. 401 defines "relevant evidence" as:
 "Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.
Evid.R. 403 discusses when the exclusion of relevant evidence is mandatory or discretionary. This rule provides:
 (A) Exclusion Mandatory. Although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury.
 (B) Exclusion Discretionary. Although relevant, evidence may be excluded if its probative value is substantially outweighed by considerations of undue delay, or needless presentation of cumulative evidence.
We find the trial court properly determined this evidence was relevant and its probative value substantially outweighed by those considerations contained in Evid.R. 403(A) and (B). The references to appellant's gang affiliation were highly relevant since it provided an explanation for appellant's attempt to frame Pierre Williams. Williams was the person who had betrayed appellant and the gang in a prior criminal case. This betrayal formed the basis for appellant's attempt to frame Williams for the murder of Carlos Brown.
The trial court did not abuse its discretion when it permitted the state to introduce evidence, through letters appellant sent to his cousin from prison, concerning appellant's gang activity.
Appellant's first assignment of error is overruled.
 II
In his second assignment of error, appellant maintains the prosecutor engaged in misconduct from the beginning of the trial through closing argument. We disagree.
We cannot address the issue of prosecutorial misconduct as appellant fails to cite, in the record, where the alleged prosecutorial misconduct occurred. Instead, appellant merely states, in his brief, that the prosecutor "engaged in a course of conduct that was unprofessional and inappropriate in a criminal proceeding," and that this course of conduct extended from the "[b]eginning in opening statement, continuing through the trial and ending in closing argument." Appellant's Brief at 7.
App.R. 12(A)(2) provides:
 The court may disregard an assignment of error presented for review if the party raising it fails to identify in the record the error on which the assignment of error is based or fails to argue the assignment separately in the brief, as required under App.R. 16(A).
Because appellant failed to specifically identify, in the record, where the alleged allegations of prosecutorial misconduct occurred, we overrule this assignment of error.
Appellant's second assignment of error is overruled.
 III
In his final assignment of error, appellant raises other errors in this case which were not raised herein but are apparent on the record in this case. This assignment of error raises anAnders claim.
We have reviewed the record in this matter and do not find any error, not already raised, of arguable merit, which would warrant the reversal of appellant's conviction.
Appellant's third assignment of error is overruled.
For the foregoing reasons, the judgment of the Court of Common Pleas, Stark County, Ohio, is hereby affirmed.
By: Wise, J., Gwin, P. J., and Hoffman, J., concur.
For the reasons stated in the Memorandum-Opinion on file, the judgment of the Court of Common Pleas of Stark County, Ohio, is affirmed.