OPINION
Appellant, Carl Webb, Jr., appeals the judgment and sentence of the Common Pleas Court of Logan County, Ohio, following a jury trial in which he was convicted of five counts of felonious assault. Apellant raises as error the trial court's decision to admit evidence of alleged prior bad acts during his trial.
On July 17, 2000, Bonnie Roberts and her sixteen-year-old son, Justin Argabright, were staying with Taci Alltop and her children at the home of Taci's boyfriend, Carl Webb, Jr. (hereinafter "Webb"). The home in which they were staying, located in the Indian Lake area, was actually rented by Webb's father, Carl Webb, Sr., but he allowed Webb to live there. At some point in the evening, an argument occurred between Taci and Carl. The argument intensified, and Bonnie decided that she, Taci, and the children should leave. They left in Bonnie's car, a 1994 Geo Metro. Bonnie drove, Taci rode in the passenger seat, and the children all rode in the back of the car.
Shortly after leaving, they encountered Webb, driving a 1986 Ford pick-up truck. Webb began chasing the Metro around the Indian Lake area. For a short while, Bonnie was able to elude Webb by parking in a darkened area. However, upon emerging from seclusion, the Metro was located by Webb, who once again began chasing them. During the chase, Bonnie had to maneuver her vehicle in order to go around Webb's truck and engage in other illegal driving maneuvers to evade Webb. Eventually, the Metro and the truck drove near the local state park on State Route 235. Webb hit the Metro, knocking off one of the sideview mirrors. Webb then blocked-in the Metro. As Bonnie tried to go around the truck, Webb hit his truck into the passenger side of the Metro. The contact caused Taci's fourteen-year-old son, Brooks Hodge, to tumble over his five-year-old brother and onto Justin Argabright.
At the time of the collision, State Park Officer Lee Gaines was locking the local state park's nature center, which was located in close proximity to the collision, when he heard the crash. He quickly locked the door, radioed for assistance, and drove his patrol car to the scene. As Officer Gaines was locking the building, he heard someone yelling and noticed both the truck and the Metro on the road. However, upon arriving at the scene, Officer Gaines noted that only the Metro remained at the site while the truck had left. After discovering that no major injuries had occurred, Officer Gaines began taking statements from the vehicle's occupants. He further noted that all of the occupants of the Metro seemed upset and frightened.
The following day, Webb called his probation officer, Mike Madigan. Webb asked Madigan if he was in trouble and whether he was going to be put in jail. Webb also inquired as to whether Madigan had heard what had happened the previous night. Madigan told Webb that he had heard about it and that Webb should come to his office so that they could talk about it. Webb agreed to come to the office. Madigan also warned Webb not to "run." Webb did not come to Madigan's office that day nor any day thereafter. On July 20, 2000, a warrant was issued for Webb's arrest. Webb left the area with the truck and did not return until sometime in late December 2000 or early 2001.
On February 12, 2001, Carl Webb, Jr. was indicted on five counts of felonious assault. On June 14, 2001, counsel for Webb filed a motion in limine, seeking, inter alia, to prevent the introduction of evidence by the State regarding alleged prior bad acts committed by Webb. The trial court held a hearing on this motion on June 18, 2001, but the court overruled the motion by way of a written judgment entry on August 14, 2001.
The case proceeded to a jury trial on October 23, 2001, which continued through October 24, 2001. During the trial, evidence of prior bad acts, allegedly committed by Webb, was permitted over the objection of defense counsel. The evidence, as presented during the testimony of Deputy Sheriff Mike Brugler, concerned a prior incident involving a former girlfriend of Webb. Deputy Brugler testified that the victim of that incident, Webb's girlfriend at the time, alleged that Webb chased her in his truck, continuously bumping her vehicle with his, including a hit from behind that pushed her off a small side street and onto State Route 235, a busy roadway.
To refute the testimony of Deputy Bugler, Webb presented the testimony of G. Michelle Yezzo, a forensic scientist for the State of Ohio. Yezzo testified that she analyzed the evidence provided to her regarding Webb's previous girlfriend and the allegations involving the car chase. Her analysis of the evidence revealed that the two types of paint chips and the two types of glass samples submitted to her did not match, and the truck's license plate did not reveal the presence of any foreign paint samples.
After Deputy Bugler's testimony on the first day of the trial, the trial court instructed the jury as follows:
 Ladies and gentlemen, the testimony you just heard is sometime (sic) referred to as prior bad acts testimony. And evidence of other crimes cannot be used to prove the bad character of the defendant and then you can infer, well, if the defendant's a bad character, he must have done this crime. So you should not consider the evidence of a prior bad act in that manner. However, it can be used to — as proof of knowledge of the crime or absence of mistake or accident, so you can consider it for those limited purposes, but you shouldn't use it to infer bad character.
The following day when Yezzo began to testify, the trial court first reminded the jury of its admonition after Deputy Bugler's testimony on the previous day. At the conclusion of Yezzo's testimony, the court reiterated its earlier admonitions, once again reminding the jury that this testimony was for the limited purpose of showing the absence of mistake and/or showing the knowledge of the defendant. Finally, the trial court provided the same instruction to the jury during its recitation of the jury instructions immediately preceding the jury's deliberations.
Webb was found guilty of all five counts of felonious assault. Thereafter, Webb was sentenced to six years of imprisonment on each count. The trial court further ordered that the sentence on each count was to be served concurrently. This appeal followed, and Webb now asserts one assignment of error.
 THE COURT ERRED TO THE PREJUDICE OF APPELLANT WHEN IT ALLOWED APPELLANT'S ALLEGED PRIOR BAD ACTS TO BE ENTERED AS EVIDENCE.
This Court's analysis of this issue begins by noting that "the decision of whether or not to admit evidence rests in the sound discretion of the [trial] court[.]" Wightman v. Consolidated Rail Corp. (1999),86 Ohio St.3d 431, 437 (citing Peters v. Ohio State Lottery Comm. (1992), 63 Ohio St.3d 296, 299); see also State v. Sage (1987),31 Ohio St.3d 173, 182. Thus, this Court will not disturb the trial court's decision unless it is unreasonable, arbitrary, or capricious. In addition, this abuse of discretion must have materially prejudiced the defendant. State v. Lowe (1994), 69 Ohio St.3d 527, 532 (citing Statev. Maurer (1984), 15 Ohio St.3d 239, 265).
The Rules of Evidence prohibit the use of "other crimes, wrongs, and acts * * * to prove the character of the accused in order to show that he acted in conformity therewith." Evid.R. 404(B). However, both the Rules of Evidence and Ohio statutory law provide exceptions to this rule. Evidence Rule 404(B) states that prior bad acts evidence may "be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Furthermore, the Revised Code provides
 In any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing an act is material, any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question may be proved, whether they are * * * prior or subsequent thereto[.]
R.C. 2945.59. However, "R.C. 2945.59 must be strictly construed against the state[,]" as it is an exception to the general rule of the prohibition of character evidence. State v. Burson (1974),38 Ohio St.2d 157, 158 (citation omitted).
In order to admit evidence of prior bad acts, not only must such evidence tend to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident[,]" there must also be "substantial proof that the alleged other acts were committed by the defendant." Lowe, 69 Ohio St.3d at 530 (citing State v. Broom
(1988), 40 Ohio St.3d 277, 282-283). However, in order for this evidence to be admitted to prove identity, "the acts should show a modusoperandi identifiable with the defendant." Lowe, 69 Ohio St.3d at 531
(citing State v. Hutton (1990), 53 Ohio St.3d 36, 40). "To be admissible to prove identity through a certain modus operandi, other-acts evidence must be related to and share common features with the crime in question."Lowe, supra.
In its August 14, 2001 judgment entry, wherein the court decided to allow the prior bad acts into evidence during the trial, the trial court specifically found that "[t]here [were] striking similarities between the instant facts and Defendant's prior criminal record involving felonious assault." Counsel for Webb maintains that this finding was based upon an erroneous assumption by the trial court because Webb was never convicted of felonious assault, but rather, was convicted of domestic violence for hitting his then-girlfriend with a door in a house, not for an incident involving a vehicle. However, Webb's motion in limine to the trial court states that Webb was indicted for felonious assault but pled to a lessor included offense.
This Court does not have the record of Webb's prior conviction of domestic violence before it nor does it have the transcript of the motion in limine hearing on June 18, 2001. Thus, this Court is unable to ascertain the circumstances involved in that conviction. Both the Ohio Supreme Court and this Court have noted that "[w]hen a party seeks an appeal, the appellant bears the burden of demonstrating error by reference to the record of the proceedings below, and it is appellant's duty to provide the reviewing court with an adequate transcript." Burrell v.Kassicieh (1998), 128 Ohio App.3d 226, 232 (citing Knapp v. EdwardsLaboratories (1980), 61 Ohio St.2d 197, 199). The Rules of Appellate Procedure, specifically App.R. 9, provide the procedure for making the transcript a part of the record and for alternatives when a transcript is unavailable. Thus, this Court "must presume the regularity of the trial court proceedings and the presence of sufficient evidence to support the trial court's decision" in the absence of a complete and adequate record. Burrell, supra (citations omitted).
Webb further contends that there was "strong [forensic] evidence that the incident did not occur[,]" thus negating the requirement that there be substantial proof that the alleged other acts were committed by Webb. Although the forensic evidence did not conclusively establish that Webb committed the prior bad acts, "it is not necessary for the state to establish the identity of the accused as the perpetrator of the similar act by proof beyond a reasonable doubt." State v. Carter (1971),26 Ohio St.2d 79, paragraph one of the syllabus. Deputy Bugler's testimony supports the finding of the trial court as to similarity and as to identity. In the prior incident, Webb was accused of using his truck to chase the vehicle in which his girlfriend was traveling and of running his truck into that vehicle. In the case sub judice, Webb was once again accused of using his truck to chase the vehicle in which his girlfriend was traveling and of running his truck into that vehicle. In both instances, the victims identified Webb as the perpetrator. Given the testimony of Deputy Bugler, the similarities of the two incidences, the fact that the trial court made several admonitions to the jury of the limited purpose of the prior bad acts evidence, and the lack of a transcript of the motion in limine hearing, this Court cannot find that the trial court abused its discretion in allowing the evidence of the prior bad acts for the limited purpose of absence of mistake and/or showing the knowledge of Webb.
Even assuming, arguendo, that evidence of the prior bad acts was inadmissible, this Court does not find that Webb was materially prejudiced by its admission. Three eyewitnesses testified that Webb chased the Metro around the Indian Lake area, hit the Metro on the passenger side, and then fled the scene. In addition, Officer Gaines testified that he heard the crash, that he initially saw both the Metro and a truck at the scene, that upon arriving at the crash site only a few seconds later he saw the taillights of a truck headed for Lakeview, and that the occupants of the Metro seemed frightened and upset. Moreover, Mike Madigan testified that Webb called him the following day to ask if he was going to put Webb in jail, specifically asking whether he had heard about what happened the previous night. Although Webb presented evidence to refute the State's evidence against him, the State had ample evidence, independent of the prior bad acts evidence, by which a jury could find that Webb committed five counts of felonious assault. Therefore, the assignment of error is overruled.
For these reasons, the judgment of the Common Pleas Court of Logan County, Ohio, is affirmed.
Judgment affirmed.
BRYANT and WALTERS, J.J., concur.