OPINION
Appellant appeals a judgment of the Richland County Common Pleas Court convicting him of Aggravated Murder (R.C. 2903.01(B)), and Aggravated Robbery (R.C. 2911.01(A)(3)), each with an accompanying firearm specification:
ASSIGNMENTS OF ERROR:
 I. THE JURY'S VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND WAS INSUFFICIENT AS A MATTER OF LAW TO ESTABLISH EACH AND EVERY ELEMENT OF THE CRIMES CHARGED.
 II. THE TRIAL COURT ERRED IN PERMITTING THE AMENDMENT TO THE INDICTMENT TO INCLUDE A DIFFERENT SPECIFICATION TO BOTH COUNT ONE AND COUNT TWO OF THE INDICTMENT, WHICH AMENDED INDICTMENT WOULD RESULT IN AN INCREASED SENTENCE DUE TO A CHANGE IN GOVERNING LAW.
 III. APPELLANT WAS DEPRIVED OF EFFECTIVE ASSISTANCE OF COUNSEL PROVIDED BY THE SIXTH AMENDMENT OF THE UNITED STATES CONSTITUTION AND ARTICLE I SECTION 10
OF THE OHIO CONSTITUTION, AS WELL AS THE DUE PROCESS PROTECTION UNDER THE FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION AND IN ARTICLE I
SECTION 16 OF THE OHIO CONSTITUTION.
 IV. THE TRIAL COURT ERRED IN PERMITTING A WITNESS TO GIVE AN OPINION AS TO THE DEFENDANT'S GUILT BASED UPON PURE SPECULATION.
On November 21, 1997, Shawn Kilgore appeared in the Richland County Common Pleas Court, and pled guilty to two counts of Drug Abuse and one count of Illegal Possession of Food Stamps. He was sentenced to one year incarceration. The court stayed execution of the sentence until December 2, 1997, to give Kilgore an opportunity to get his affairs in order over the Thanksgiving holiday.
Shawn Kilgore's plans after his court appearance included selling $3,500 worth of crack cocaine, before he reported to prison. Kilgore was a known drug dealer in Mansfield. In order to liquidate his crack cocaine supply before his incarceration, he recruited Tacuma Fuller, a known drug dealer from Detroit, and appellant, a Detroit drug dealer and enforcer. On Sunday, November 23, 1997, Tacuma Fuller was at the residence of LaKesha Williams in Mansfield. He retrieved $4,000 in cash from her mattress. Fuller gave the money to Kilgore for safe keeping. He placed $2,000 of cash in each of his shoes. While Fuller was counting the stash, LaKesha Williams noticed that appellant was carrying a black .25 caliber handgun.
In the afternoon of November 23, 1997, Fuller gave Kilgore money to rent a room at the Comfort Inn in Mansfield. The room was registered in Kilgore's name, as Fuller was hiding from the police. That evening, Kilgore and Fuller cut up pieces of crack cocaine and packaged it, preparing it for sale.
Four people spent the night in the hotel room: Kilgore, Fuller, appellant and Deanna Friend. At approximately 8:00 A.M. the next morning, Fuller left the room. At 9:05 A.M., appellant received a telephone call at the room. When he finished the conversation, he ordered Deanna Friend to leave the room. While she was getting dressed, Friend noticed Kilgore counting a large amount of crack cocaine. She also noticed that he had a sizeable ball of money at the table. There was a .25 caliber handgun on a table between the two beds in the room. She left the room at 9:25 A.M. to wait in the hotel lobby for a cab. Appellant was still in the room. Appellant escorted Friend to the hotel lobby.
Appellant returned to the room for five minutes. He again returned to the lobby, kissed Friend, and returned to the room for ten to fifteen minutes. When he came back to the lobby, he zipped up his jacket, and told Friend that he was walking across the street for a pack of cigarettes. Friend decided to go back to the room to call a cab. A "do not disturb" sign was attached to the door knob. She knocked on the door, but no one answered. She hollered for Kilgore to let her in the room, but there was no response. Finally, a cab arrived at the hotel, and Friend returned to her residence.
Before leaving the hotel room, appellant called Robert Myers, a drug addict, for a ride. Appellant told Myers he had to "get the hell out of here." Appellant was picked up by a cab at a McDonald's restaurant, and dropped off at Myers' house. Myers was interested in purchasing $50 worth of crack cocaine from appellant. Appellant produced a large sandwich baggie with a significant amount of crack in it. He also pulled a large ball of money from his pocket. From past dealings with appellant, Myers knew that appellant was not known to possess large quantities of drugs or money. Appellant showed Myers a white pillow case with a bullet hole in it. There was a black smudge around the hole.
Meanwhile, at the Comfort Inn, a housekeeper observed a motionless, dressed, black male lying face up on a bed inside the room registered to Kilgore. She returned later to find the man in the same position. The discovery was reported to 9-1-1, and the police and a rescue squad were dispatched to the Comfort Inn.
The crime scene revealed that Kilgore was shot once in the head. One of the two pillows in the room had a bullet hole through it. A pillow case was missing. The victim had one shoe on and one shoe off, and a .25 caliber semi-automatic handgun was found near the victim. Police found $1.09 in the room, but no other cash or illegal drugs. Upon further investigation, police concluded that Shawn Kilgore was placed on the bed after he was shot.
Later that evening, appellant contacted a friend for a ride to the Knight's Inn in Mansfield. The friend signed the hotel registration on behalf of appellant, as he was instructed to do. Appellant was later arrested for the murder of Shawn Kilgore.
Appellant admitted that he shot Shawn Kilgore, but claimed the shooting was an accident. He claimed that he was playing with the handgun, which he had placed inside a pillow, when he accidentally shot Shawn Kilgore in the head.
Appellant was indicted by the Richland County Grand Jury on one count of Aggravated Murder and one count of Aggravated Robbery, each carrying a firearm specification. The case proceeded to jury trial. Appellant was convicted as charged. He was sentenced to twenty years incarceration to life for Aggravated Murder, and ten years incarceration for the Aggravated Robbery, to run concurrently. He was sentenced to three years incarceration on the gun specifications.
 I.
Appellant argues that the judgment was against the manifest weight of the evidence, and the evidence was insufficient to establish each element of the crimes charged.
Sufficiency of the evidence is a legal standard applied to determine whether the case may go to the jury, or whether the evidence is legally sufficient to support the jury verdict as a matter of law. State vs. Thompkins (1997), 78 Ohio St.3d 380,386. Sufficiency is a test of adequacy of the evidence. Id.
Weight of the evidence concerns the inclination of the greater amount of credible evidence, offered at trial, to support one side of the issue rather than the other. Id. at 387. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against conviction. Id.
Appellant was convicted of Aggravated Murder:
 (B) No person shall purposely cause the death of another or the unlawful termination of another's pregnancy while committing or attempting to commit, or while fleeing immediately after committing or attempting to commit kidnapping, rape, aggravated arson or arson, aggravated robbery or robbery, aggravated burglary or burglary, or escape.
R.C. 2903.01(B).
Appellant was also convicted of Aggravated Robbery:
 (A) No person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense, shall do any of the following: . . .
 (3) Inflict, or attempt to inflict, serious physical harm on another.
R.C. 2911.01(A)(3).
Appellant first argues that the evidence on the charge of Aggravated Robbery was insufficient to demonstrate that the infliction of physical harm occurred contemporaneously with the theft offense. There was sufficient evidence to demonstrate that appellant shot Kilgore in order to facilitate the theft offense. On the date of the murder, appellant and Kilgore's sole method of support was dealing drugs. Kilgore had in his possession $4,000 in cash and a large bag of crack. Immediately before Kilgore was shot, he was counting drugs and money at a table in the room. There was testimony from Fuller and Friend that they did not take any drugs or money from the room. However, when police arrived at the crime scene, all the crack and money were gone. Although appellant had a reputation in the drug community for possessing small amounts of drugs and money, he appeared at Robert Myers' house right after the shooting with large amounts of both. According to the testimony of Friend, appellant was in the hotel room for only for short periods of time after she left the room. This was sufficient credible evidence from which the jury could conclude that appellant murdered Kilgore during the theft of the crack cocaine and money.
Appellant also argues that the evidence does not demonstrate that he purposefully killed Kilgore while committing a felony, as the evidence did not demonstrate that he committed the crime of Aggravated Robbery. For the reasons discussed above, the evidence was sufficient to demonstrate that appellant inflicted physical harm during the commission of the theft offense. Therefore, the State proved that appellant caused Kilgore's death while committing Aggravated Robbery.
Appellant argues that the evidence is insufficient to demonstrate that he committed a theft offense, and that he purposefully shot Kilgore. He claims that the shooting was accidental, and the crack and money vanished from the room unbeknownst to appellant.
According to appellant's confession, the firearm was coincidentally inside a pillow, and he was sitting on a bed directly across from the victim's bed, when the gun accidentally went off by itself. However, the Coroner disputed appellant's version of the shooting. The Coroner found that the path of the head would was in a downward trajectory. In addition, police officers investigating the crime scene believed that Kilgore was moved after he was shot. Although Kilgore was found lying on his back, dry blood from the head wound was running against gravity, and toward his mouth. Kilgore was shot above his right ear, a well-known kill point.
In addition, appellant later showed up at Robert Myers house with large amounts of drugs and money. The money was rolled into a ball. Testimony reflected that Kilgore possessed a ball of money in the room prior to the shooting.
There was sufficient evidence to demonstrate that the shooting was purposeful, and not accidental. In addition, there was sufficient evidence to demonstrate that appellant committed the theft offense.
The first Assignment of Error is overruled.
 II.
The original indictment contained a firearm specification to each count, framed in the language of R.C. 2941.141(A):
 (A) Imposition of a one-year mandatory prison term upon an offender under division (D)(1)(a)(I) of section 2929.14 of the Revised Code is precluded unless the indictment, or information charging the offense specifies that the offender had a firearm on or about the offender's person or under the offender's control while committing the offense. The specification shall be stated at the end of the body of the indictment, count, or information, and shall be in substantially the following form:
 "SPECIFICATION (or, SPECIFICATION TO THE FIRST COUNT).
 The Grand Jurors (or insert the person's or the prosecuting attorney's name when appropriate) further find and specify that (set forth that the offender had a firearm on or about the offender's person or under the offender's control while committing the offence.)"
On the morning of trial, the State moved to amend the indictment to change the language to conform to the specification found in R.C. 2941.145(A):
 (A) Imposition of a three-year mandatory prison term upon an offender under division (D)(1)(a)(I) of section 2929.14 of the Revised Code is precluded unless the indictment, count in the indictment, or information charging the offense specifies that the offender had a firearm on or about the offender's person or under the offender's control while committing the offense and displayed the firearm, brandished the firearm, indicated that the offender possessed the firearm, or used it to facilitate the offense. The specification shall be stated at the end of the body of the indictment, county, or information, and shall be stated in substantially the following form:
 "SPECIFICATION (or, SPECIFICATION TO THE FIRST COUNT).
 The Grand Jurors (or insert the person's or the prosecuting attorney's name when appropriate) further find and specify that (set forth that the offender had a firearm on or about the offender's person or under the offender's control while committing the offense and displayed the firearm, brandished the firearm, indicated that the offender possessed the firearm, or used it to facilitate the offense.)"
As indicted, the specification carried a penalty of one year incarceration. Pursuant to the amendment, the specifications carried a penalty of three years incarceration.
The court may amend the indictment at any time in respect to any defect, imperfection, or omission in form or substance, or of any variance with the evidence, provided no change is made in the name or identity of the crime charged. Crim.R. 7(D). Pursuant to this rule, the State may not amend an indictment to add a specification, without first presenting a specification to the Grand Jury. State vs. Dilley (1989), 47 Ohio St.3d 20.
The State argues that the error in the instant case was merely a scrivener's error in the indictment. The State argues that leaving out the words "and used it to facilitate the offense" was obviously a clerical error, which occurred at the time the indictment was prepared.
However, the amendment to the indictment changed the nature and identity of the specification. While the Grand Jury included the language found in R.C. 2941.141(A) in the indictment, the amendment changed the language to indict the specification under a different statute, R.C. 2941.145. The amendment also changed the mandatory prison term from one year to three years. Because the amendment in the instant case changed the nature and identity of the specification, the court erred in permitting the amendment on the morning of trial.
The second Assignment of Error is sustained.
 III.
Appellant argues that counsel was ineffective.
Counsel is not ineffective unless his performance fell below an objective standard of reasonable representation, and the defendant was prejudiced by such performance. Strickland vs. Washington (1984),466 U.S. 668; State vs. Bradley (1989), 42 Ohio St.3d 136,cert. denied, 497 U.S. 1011. To show prejudice, the defendant must show that had counsel not erred, there is a reasonable probability that the outcome of the trial would have been different. Id.
Appellant first argues that counsel was ineffective for failing to move for a directed verdict of acquittal pursuant to Crim.R. 29(A). As discussed in Assignment of Error I. above, the evidence was sufficient to support the conviction. Therefore, appellant has not demonstrated that he would have been acquitted had counsel moved for a directed verdict.
Appellant argues counsel was ineffective for failing to object to references to appellant and his companions as "drug dealers," and to references to appellant as an "enforcer" for the drug dealers. R.C. 2945.59 and Evid.R. 404(B) permit the introduction of other acts evidence in certain circumstances. Evidence other acts are admissible where they form part of the immediate background of the crime, and concern events which are inextricably related to the criminal act. State vs. Broom (1988),40 Ohio St.3d 277, 282. Therefore, evidence of a defendant's drug usage and drug trafficking is admissible where it forms the immediate background of the crimes charged, and concern events inextricably related to a murder committed during a drug deal.State vs. Williams (December 3, 1996), Richland App. No. 95-CA-93, unreported. In the instant case, evidence of drug dealing by appellant, the victim, and their companions was inextricably related to the crime charged. Therefore, appellant has not demonstrated that had an objection been made, it would have been sustained.
Finally, appellant argues that counsel failed to object to the jury instruction on Robbery. Appellant argues that the instruction did not specifically include language requiring the use of force to be contemporaneous to the theft offense. The instruction in the instant case complied with Ohio Jury Instructions. The court conveyed to the jury that they must find that appellant inflicted harm on Kilgore in facilitation of the theft offense. Further, appellant has not demonstrated that had the trial court specifically used the word "contemporaneously," he would have been acquitted.
The third Assignment of Error is overruled.
 IV.
Appellant argues that the court erred in allowing Tacuma Fuller to testify that he believed appellant killed the victim. Assuming arguendo that the admission of the testimony was error, any error was harmless, as appellant admitted that he shot Kilgore.
The fourth Assignment of Error is overruled.
The judgment of conviction and sentence on the charges of Aggravated Robbery and Aggravated Murder are affirmed. The judgment of conviction and sentence on the firearm specifications pursuant to R.C. 2941.145 are vacated.
By: Reader, J., Gwin, P. J. and Wise, J. concur.
For the reasons stated in the Memorandum-Opinion on file, the judgment of conviction and sentence on the charges of Aggravated Robbery and Aggravated Murder are affirmed. The judgment of conviction and sentence on the firearm specifications pursuant to R.C. 2941.145 are vacated. Costs to appellant.