OPINION
Defendant-appellant Eric B. Pearson appeals his conviction and sentence by the Seneca County Court of Common Pleas, following a jury verdict finding appellant guilty of aggravated burglary, abduction, gross sexual imposition, felonious sexual penetration, attempted rape, and rape.
On July 14, 1994, Theresa Tiell was attacked in her home in Tiffin, Ohio by a male assailant of medium build. As Ms. Tiell slept facedown in her bed, the assailant grabbed her from behind and threatened to kill her and her four-year old son if she did not comply with his sexual demands. The assailant restrained Ms. Tiell, removed her clothes, and placed a pillowcase over her head. He then forcibly touched her breasts and vagina, and attempted vaginal intercourse in front of Ms. Tiell's young son. After the assailant's first attempt at vaginal penetration was unsuccessful, he became angry and renewed his threats of harm to Ms. Tiell and her son.
The assailant next forced Ms. Tiell to engage in fellatio until he ejaculated. However, Ms. Tiell was able to preserve a sample of the assailant's semen by spitting the ejaculate into her pillowcase. This semen sample was later analyzed for DNA evidence and compared to blood samples obtained from appellant. After the rape, the assailant untied Ms. Tiell and began to apologize for his actions. He removed one of his gloves and began to caress her forehead and face, but again threatened to kill Ms. Tiell's son if she contacted the police. The assailant directed Ms. Tiell to stay in bed and face the window as he left her residence. The attack on Ms. Tiell lasted for approximately two hours.
About two hours later that same morning, seventeen-year old Bethany Riley was attacked by a Caucasian male of medium build. While Ms. Riley was riding her bike on Township Road in Tiffin, Ohio, a blue Buick Park Avenue veered into Ms. Riley's lane of traffic and knocked her from her bike. A man, concealed by a dark hooded sweatshirt and a bandanna covering his face, exited the vehicle and approached her. The man began yelling at her and struck her across the face with his open hand. He then forced Ms. Riley into a wooded area and pushed her to the ground. While she was face down on the ground, the assailant restrained Ms. Riley's arms behind her back.
Ms. Riley began to struggle and was able to break free from her attacker, but he soon recaptured her and again forced her to lie on the ground. He then told Ms. Riley to remain on the ground while he walked to his car. However, Ms. Riley got up and ran to a nearby farm house, where she was able to telephone the Sheriff's Department.
The Tiffin Police Department was already in the process of investigating the rape of Stacie Schwab, which occurred about two months earlier. Appellant became a suspect in the rape of Ms. Schwab, along with the attacks on Ms. Tiell and Ms. Riley, when the police used Ms. Riley's description of the assailant's vehicle to scan the automobile records. The computer records revealed that a car matching that description was registered to appellant's father, Leonard Pearson. The police were also aware of appellant's criminal history and that appellant had recently been released from state prison after serving approximately twelve years on a prior rape conviction.
Based upon this information and the similarities between the three incidents, the police obtained and executed a search warrant upon defendant's residence and vehicle on August 22, 1994. They found several articles of dark colored clothing, including a blue hooded sweatshirt and a pair of gloves. The next day, the police sought a court order from the Seneca County Common Pleas Court to obtain a blood sample from defendant. The police intended to compare this blood sample with evidence collected at the several crime scenes as well as samples taken from the victims of both rapes. The court granted the order, which was executed on September 12, 1994. Additionally, blood samples were obtained from other males acquainted with Theresa Tiell.
The blood samples were submitted to the Serological Research Institute for DNA analysis. The blood samples from the male subjects, including defendant, and the blood sample from Ms. Tiell were subjected to genetic marker analysis and compared with semen samples obtained from the crime scene. The results were released to the Tiffin Police Department on March 15, 1995, and indicated that the semen found on Theresa Tiell's pillowcase had the same seven genetic marker types as those found in defendant's blood. Defendant was then separately indicted for the crimes committed against Theresa Tiell and Stacie Schwab.
On May 10, 1995, defendant filed a motion to suppress all evidence obtained as a result of the blood sample taken from him on September 14, 1994, arguing that the state was required to possess probable cause and obtain a warrant prior to taking a blood sample. While the trial court was considering this motion, the state filed an application with the Tiffin Municipal Court for a search warrant to obtain a second blood sample from the defendant. The application was supported by a six-page affidavit prepared by Tiffin Police Lieutenant Michelle Craig that detailed the attacks on Stacie Schwab, Theresa Tiell and Bethany Riley. The affidavit describes in detail the many similarities between the attack on Ms. Tiell and the attack on Ms. Schwab, and the reasons for suspecting defendant in each attack. It also discusses defendant's involvement with several other sexual assaults and abductions. The search warrant application was approved by a judge with no prior connection to the case, and on June 19, 1995 a second blood sample was obtained from defendant. This second sample was submitted to the Serological Research Institute and subjected to the same DNA tests as the first sample. The Institute's conclusions were released to the Tiffin Police Department one month later and again pointed to defendant as the perpetrator of the crimes against Theresa Tiell.
On August 4, 1995, the Seneca County Common Pleas Court held a hearing on defendant's motion to suppress. Defendant had in the interim filed a supplemental motion to suppress the second blood sample as a "fruit" of the first illegal search. On August 16, 1995, the trial court denied both of defendant's motions.
At defendant's jury trial, the state utilized the evidence obtained from the DNA analysis of both blood samples. However, the court did not permit the introduction of "other acts" evidence pertaining to the rape of Stacie Schwab. Defendant was convicted and sentenced to the maximum statutory sentences for aggravated burglary, abduction, gross sexual imposition, felonious sexual penetration, attempted rape, and rape.
On October 4, 1996, this Court reversed the judgment and sentence. State v. Pearson (1996), 114 Ohio App.3d 168. We held, inter alia, that the blood sample taken from defendant on September 12, 1994 was inadmissible, but that the sample taken June 19, 1995 was admissible. We also held that the trial court erred by excluding the testimony of Stacie Schwab. Based on the court's errors, we remanded the case for a new trial.
Prior to defendant's second trial, the state filed notice that it intended to present additional "other acts" testimony stemming from an incident that occurred September 23, 1993 in Bowling Green, Ohio. On that date, Jennifer Nacca and her two roommates went out to a local bar. At approximately 1:30 a.m., Ms. Nacca left the bar alone and began walking home, but was intercepted by a man with a bandanna covering his face. The man grabbed her, covered her mouth and threatened to shoot her if she screamed. He then carried her to the back of a house where he pinned her to the ground. The man told Ms. Nacca that he was "not usually like this" and that he "just wanted somebody to love."
Ms. Nacca believed that she could save herself by lying to her assailant, and she led him to believe that the two could have a relationship, and that they should go back to her house. The two began walking, but unbeknownst to her assailant, Ms. Nacca led him towards a nearby house where her friends lived. On the way, the man periodically took off his bandanna and made Ms. Nacca kiss him. Once they arrived at the apartment, however, the man refused to come in. Ms. Nacca managed to get away from the man, entered the apartment and called the police. She later identified her assailant as the defendant from a photo array.
Defendant was retried and the state presented "other acts" testimony from Stacie Schwab, Bethany Riley, and Jennifer Nacca. Additionally, an expert testified about the results of the DNA tests of samples taken from both Theresa Tiell and Stacie Schwab. Defendant was again found guilty of aggravated burglary, abduction, gross sexual imposition, felonious sexual penetration, attempted rape, and rape. On October 30, 1997, the trial court sentenced the defendant to the same terms of imprisonment ordered in the original prosecution.
On November 26, 1997, defendant filed an appeal of the trial court's judgment and sentence, and on May 11, 1998, defendant's counsel filed a brief alleging three assignments of error. The appeal was submitted for this Court's decision on July 28, 1998, but shortly thereafter defendant apparently became dissatisfied with his representation and discharged his appellate counsel. On October 22, 1998, defendant filed an affidavit alleging that despite his direct instructions, his appellate counsel had failed to argue that the trial court's proceedings violated his right to a speedy trial. On November 9, 1998, defendant's new appellate counsel filed an appearance and motion for leave to file another brief and for reargument. The state objected, but on December 3, 1998 this Court vacated the order submitting the case for decision, allowed defendant's new counsel to file a supplemental brief and set the case for reargument. Subsequently, defendant's counsel filed a brief that rephrased one of the previous assignments of error, and added three others. In accordance with our decision of December 3, 1998, we will address all of defendant's assigned errors.
Assignment of Error I:
 THE TRIAL COURT REVERSIBLY ERRED TO THE PREJUDICE OF THE DEFENDANT-APPELLANT WHEN THE COURT ALLOWED TESTIMONY OF THE DNA TESTING RESULTS OF STACIE SCHWAB, WHICH IDENTIFIED THE DEFENDANT-APPELLANT AS THE PERPETRATOR, AS "OTHER ACTS" EVIDENCE.
Assignment of Error II:
 THE TRIAL COURT REVERSIBLY ERRED TO THE PREJUDICE OF THE DEFENDANT-APPELLANT, WHEN THE COURT ALLOWED THE TESTIMONY OF THE PHOTO-IDENTIFICATION BY JENNIFER NACCA, WHICH IDENTIFIED THE DEFENDANT-APPELLANT AS THE PERPETRATOR, AS "OTHER ACTS" EVIDENCE.
Because defendant's first two assigned errors are premised on a single argument, we will address them together. In both assignments, defendant argues that the specific evidence admitted by the court was not properly admissible as "other acts" evidence under Evid.R. 404(B) and R.C. 2945.59.[1]
At the outset, we observe that both the statute and the rule must be construed against allowing admissibility of "other acts" evidence. State v. Broom (1988), 40 Ohio St.3d 277, 282. However, the Supreme Court has held:
 Evidence of other acts is admissible if (1) there is substantial proof that the alleged other acts were committed by the defendant, and (2) the evidence tends to prove motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
State v. Lowe (1994), 69 Ohio St.3d 527, 530, citing State v. Broom, 40 Ohio St.3d at 282-83. Defendant's argument is premised upon a strict reading of Evid.R. 404(B)'s plain language:
 Evidence of the other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
Defendant argues that the text of the rule only allows the admission of testimony about "acts" allegedly committed by a defendant. According to defendant's argument, it does not allow physical evidence or out of court identifications because those types of evidence cannot logically prove "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake." Defendant relies heavily on portions of State v. Lowe in which the Ohio Supreme Court described the purposes of "other acts" evidence:
 A certain modus operandi is admissible not because it labels a defendant as a criminal, but because it provides a behavioral fingerprint which, when compared to the behavioral fingerprints associated with the crime in question, can be used to identify the defendant as the perpetrator. Other-acts evidence is admissible to prove identity through the characteristics of acts rather than through a person's character. To be admissible to prove identity through a certain modus operandi, other-acts evidence must be related to and share common features with the crime in question. (emphasis added).
 Id. at 531. Defendant contends that because "other acts" evidence is for only limited purposes, the type of "other acts" evidence that is admissible should be restricted to evidence that tends to prove those limited purposes. Specifically, defendant argues that because DNA evidence regarding the attack on Stacie Schwab is only logically related to the question of who attacked Stacie Schwab, it cannot prove motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake as to the attack on Theresa Tiell. According to defendant's reading of Evid.R. 404(B), DNA evidence of the attack on Stacie Schwab is therefore irrelevant and inadmissible in this case. Defendant makes a similar argument about Jennifer Nacca's identification of him as her attacker. According to defendant, Ms. Nacca's identification of defendant has no relevancy to the question of who attacked Theresa Tiell and should have been excluded.
We believe defendant has misinterpreted Evid.R. 404(B). Defendant essentially argues that after a court has deemed evidence of an other act to be admissible, it must make a further inquiry to determine which particular evidence of that act comports with the "logical relation" test that defendant alleges Evid.R. 404(B) to require. In State v. Lowe, 69 Ohio St.3d 527, syllabus paragraph one, the Ohio Supreme Court held:
 To be admissible to prove identity through a certain modus operandi, other-acts evidence must be related to and share common features with the crime in question.
Neither Lowe nor any other case defendant has cited mandates the two step inquiry defendant has proposed. Moreover, it is clear that both the DNA evidence of defendant's attack on Ms. Schwab as well as Ms. Nacca's photo identification are admissible to establish the identity of the defendant as the person who committed those crimes. For identity evidence to be admissible under Evid.R. 404(B), it must first be shown by substantial proof that the defendant on trial is the same person who committed the other act. See State v. Broom at 40 Ohio St.3d 277, 282-83. Only after the defendant's identity as the perpetrator of the other act is established can the jury utilize the "behavioral fingerprint" of the other act to draw a conclusion as to the identity of the perpetrator of the offense charged. The rule proposed would require that evidence of "other acts" be presented to the jury unaccompanied by any proof of the defendant's responsibility for those acts. This result seems to us more unreasonable, unworkable, and prejudicial than admitting evidence tending to prove that the "other acts" were committed by the defendant on trial. Defendant's first two assignments of error are accordingly overruled.
Assignment of Error III:
 THE TRIAL COURT COMMITTED REVERSIBLE ERROR TO THE PREJUDICE OF THE APPELLANT BY IMPROPERLY ADMITTING EVIDENCE RESULTING FROM THE TAKING OF SAMPLES OF THE DEFENDANT'S BLOOD INCLUDING THE RESULTS OF DNA TESTING.
Supplement to Assignment of Error III:
 THE TRIAL COURT COMMITTED PREJUDICIAL ERROR WHEN IT OVERRULED THE DEFENDANT'S MOTION TO SUPPRESS ALL EVIDENCE OF TESTS RESULTING FROM THE TAKING OF BLOOD FROM THE DEFENDANT.
Both defendant's third assignment of error and the supplement to that assignment argue that Ohio statutes and rules do not authorize the issuance of a search warrant to take a blood sample.[2]
In State v. Pearson (1996), 114 Ohio App.3d 153, 157, this Court held that
"in the absence of exigent circumstances, blood may be extracted from a person only upon the issuance of a search warrant or its functional equivalent." Additionally, the U.S. Supreme Court has observed that "search warrants are ordinarily required for searches of dwellings, and, absent an emergency, no less could be required where intrusions into the human body are concerned." Schmerber v. California (1966), 384 U.S. 757, 770. Despite this clear precedent, defendant argues that neither Crim.R. 41 nor R.C.2933.21 contemplate the issuance of a search warrant for bodily fluids, and therefore that the Tiffin Municipal Court had no authority to issue the warrant in this case.
It is our belief that the definition of "property" as used in both the statute and the rule is broad enough to encompass a defendant's blood so long as that blood is "evidence of the commission of a criminal offense." Crim.R. 41(B)(1); R.C.2933.21(B).[3] Moreover, we believe that a person is a "place" able to be searched within R.C. 2933.21's use of the term. Defendant would apparently have us adopt constructions of Crim.R. 41 and R.C. 2933.21 that exclude any evidence not specifically authorized under their provisions, even when the Fourth Amendment is clearly satisfied.
However, even if defendant's contention is correct, "there is no statutory right to the suppression of evidence. The use of lawfully obtained evidence is not prohibited merely because of the failure of a police department to comply" with the statute or the rule. State v. Ulrich (1987), 41 Ohio App.3d 384, 387. We have previously held that the issuance of the June 19, 1995 search warrant was supported by probable cause. State v. Pearson (November 23, 1998), Seneca App. No. 13-98-16, unreported, 1998 WL 811910, at *3, and that the warrant was validly issued. Id. at *4. Both the blood draw and the search warrant that authorized it were in compliance with the Fourth Amendment's requirements. Id. Defendant's third assignment of error and supplement to the third assignment of error are therefore overruled.
Supplemental Assignment of Error Number IV:
 THE TRIAL COURT COMMITTED ERROR PREJUDICIAL TO THE DEFENDANT BY OVERRULING DEFENDANT'S MOTION TO DISMISS FOR THE FAILURE OF THE STATE TO TRY THIS DEFENDANT IN A TIMELY MANNER AS REQUIRED BY THE SIXTH AMENDMENT TO THE CONSTITUTION OF THE UNITED STATES.
Defendant next argues that his constitutional right to a speedy trial was violated by the three hundred sixty-nine day delay between the October 4, 1996 decision of this Court reversing defendant's conviction and his October 10, 1997 filing of a motion to dismiss on speedy trial grounds. Defendant argues that this delay violates the U.S. Supreme Court's decision in Barker v. Wingo (1972), 407 U.S. 514. In Barker, the Court established a balancing test that is used to assess constitutional speedy trial claims. Four factors are analyzed: length of delay, reason for delay, defendant's assertion of the right, and prejudice to defendant. Barker, 407 U.S. at 530. However, the Court also observed that unless the length of the delay is "presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." Id. In State v. Pusey (July 11, 1991), Shelby App. No. 17-90-1, unreported, 1991 WL 128233, we followed this recommendation and determined that where a delay is reasonable, it was unnecessary to engage in a weighing of the other three factors. Id. at *2.
Here, defendant claims that the three hundred sixty-nine day delay was presumptively prejudicial. We would normally agree that a one-year delay raises a presumption of prejudice. However, we must note that the defendant had another trial on different charges before the same court during this period, which clearly accounts for some of the delay. Moreover, a substantial amount of delay was caused by defendant's own pretrial motions. On February 10, 1997, defendant filed three motions, including a motion to suppress the June 19, 1995 blood test results, and a motion for change of venue. The trial court overruled the motion for change of venue on July 23, 1997, but the suppression motion was not heard until August 20, 1997, in part because defendant's witness was unavailable. Thus, a substantial portion of the delay was due to the defendant's own actions. Moreover, defendant's counsel acquiesced in every continuance granted to the state. Finally, defendant was serving prison sentences for other convictions during the entire three hundred sixty-nine day period. Given the foregoing, we cannot say that the delay was presumptively prejudicial to the defendant. We therefore need not address the other factors of the Barker test. Pusey, 1991 WL 128233, at *2. Defendant's fourth assignment of error is overruled.
Supplemental Assignment of Error Number V:
 THE TRIAL COURT COMMITTED PREJUDICIAL ERROR WHEN IT FAILED TO GRANT DEFENDANT'S MOTION FOR A CHANGE OF VENUE.
Defendant's fifth assignment argues that the trial court abused its discretion when it overruled defendant's motion for change of venue. Decisions on change of venue based on publicity are largely within the discretion of the trial court. State v. Fox (1994), 69 Ohio St.3d 183, 189. The trial court is in the best position to judge whether publicity has impacted defendant's right to a fair trial, and voir dire is the best opportunity to judge whether prejudice against the defendant exists in the community. State v. Maurer (1984), 15 Ohio St.3d 239, 250-51. We will not overturn a trial court's decision overruling a motion for change of venue unless that decision is a clear abuse of discretion. State v. Landrum (1990), 53 Ohio St.3d 107, 116.
A review of the voir dire record indicates that the trial judge made considerable effort to ensure that the jury was fair and impartial, and questioned the entire pool for potential biases. Although several potential jurors had been exposed to some pretrial publicity, defendant's attorney also explored the issue of pretrial publicity in great detail during voir dire. One juror indicated that he had seen the defendant's name in the newspaper, but could not recall why. Another juror recalled seeing defendant's picture in the paper in connection with a rape case but could not recall any specifics. A third potential juror remembered seeing the defendant's name in the media but could not remember where, why, or in what context. All three of these jurors were eventually seated, but not before each one had stated that they had the ability to be fair and impartial, and also the intention to judge the case based solely on the evidence presented at trial.
Defendant has failed to set forth and our review has failed to uncover any instances on the record where a juror suggested an inability to remain fair and impartial. Moreover, defense counsel did not challenge even one juror for cause. Under these circumstances, we believe that it was well within the trial court's discretion to deny defendant's motion for change of venue. Defendant's fifth assignment of error is therefore overruled.
Supplemental Assignment of Error Number VI:
 THE TRIAL COURT COMMITTED PREJUDICIAL ERROR [BY] ADMITTING PRIOR ACTS TESTIMONY OF STACIE SCHWAB, BETHANY RILEY AND JENNIFER NACCA.
Defendant's final assignment of error argues that the trial court erred by admitting "other acts" evidence relating to the attacks on Stacie Schwab, Bethany Riley, and Jennifer Nacca. Although defendant's first two assignments of error argued that specific evidence was inadmissible as "other acts" evidence, this assignment argues that the trial court erred by admitting any evidence of "other acts." Defendant reaches this conclusion by arguing that once the trial court determined that DNA results of the June 19 blood test were admissible, that "identity was no longer a serious issue" and that therefore the testimony could not have been offered to prove identity. Defendant also argues that even if "other acts" evidence was admissible to establish identity, that the attacks on Ms. Schwab, Ms. Nacca and Ms. Riley do not share common features with the attack on Ms. Tiell such that they are admissible under Evid.R. 404(B).
In analyzing defendant's arguments, we again refer to the Supreme Court's pronouncement in State v. Lowe (1994), 69 Ohio St.3d 527,530:
 Evidence of other acts is admissible if (1) there is substantial proof that the alleged other acts were committed by the defendant, and (2) the evidence tends to prove motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
Defendant intially argues that because the DNA evidence conclusively established his identity as Ms. Tiell's attacker, the "other acts" evidence was inadmissible to prove identity. At trial, the State's DNA expert testified that the semen samples from Ms. Tiell's attacker exhibited a genetic profile that statistically occurred in one person out of one hundred seventy-two thousand people, and also that this profile matched defendant's profile. However, our review of the record indicates that defendant's counsel attacked the validity of both the expert's conclusions as well as the tests that the expert relied upon in reaching his conclusions. Furthermore, as defendant's counsel correctly observed at trial, even if the tests were taken as true, the expert's conclusions were largely based on statistical inferences. It was up to the jury to consider the reliability of the DNA evidence in reaching its conclusions. Therefore, we reject the argument that the testimony of a DNA expert eliminates identity as an issue to the extent that any other evidence of identity should be precluded.
However, defendant also argues that the attacks on Ms. Schwab, Ms. Riley and Ms. Nacca do not share common features with the attack on Ms. Tiell sufficient to satisfy the threshold of admissibility under Lowe. Particularly, defendant contends that the attacks on the three other women differ such that they cannot establish a "behavioral fingerprint" sufficient to prove that defendant committed the attack on Ms. Tiell. See, e.g. State v. Pearson (November 23, 1998), Seneca App. No. 13-98-16, unreported, 1998 WL 811910, at *8.
We initially note that in the previous appeal of this case, we held that that the testimony of Stacie Schwab established a "behavioral fingerprint" sufficient to identify defendant as the perpetrator of the attack on Theresa Tiell. See State v. Pearson (1996), 114 Ohio App.3d 168, 187. Defendant offers no reason for us to revisit that holding, and we decline to do so. We therefore restrict our analysis of this question as to whether the attacks on Jennifer Nacca and Bethany Riley were sufficiently related to the attack on Ms. Tiell to satisfy the standards for admissibility under State v. Lowe.
 A certain modus operandi is admissible not because it labels the defendant a criminal, but because it provides a behavioral fingerprint which, when compared to behavioral fingerprints associated with the crime in question, can be used to identify the defendant as the perpetrator. Other-acts evidence is admissible to prove identity through the characteristics of acts rather than through a person's character. To be admissible to prove identity through a certain modus operandi, other-acts evidence must be related to and share certain common features with the crime in question.
State v. Lowe, 69 Ohio St.3d at 531. A review of the trial testimony reveals that Ms. Nacca, Ms. Riley and Ms. Tiell were all attacked from behind by a man with approximately the same description. In each case, verbal threats implying death were used to force the victim to comply with the attacker's demands. Bethany Riley was attacked on the same day and within hours of the attack on Theresa Tiell, and Ms. Riley observed that the man who attacked her was wearing gloves, like the man who attacked Ms. Tiell. Both Ms. Riley's attacker and the man who attacked Jennifer Nacca asked them what their names were. Furthermore, the man who attacked Ms. Nacca apologetically claimed that he "was not normally like this" and expressed a desire to meet her socially. The man who attacked Theresa Tiell apologized repeatedly for his actions, lamented that he had not met her under different circumstances and suggested to her that "maybe someday we can go out together."
We conclude that both Ms. Riley's and Ms. Nacca's testimony describe events that share enough common features with and are sufficiently related to the attack on Ms. Tiell to survive the test established in State v. Lowe and was within the trial court's discretion to admit. As stated above, we also believe that the trial court properly admitted testimony as to the attack on Stacie Schwab.
The testimony of all three women was highly relevant to the identity of Theresa Tiell's attacker, and the judge properly instructed the jury that the testimony was admitted for that limited purpose. Furthermore, though the evidence demonstrating the identity of Ms. Tiell's attacker was complex and involved similarities amongst all of the crimes, it was not so confusing or misleading as to require exclusion. Accordingly, defendant's sixth assignment is overruled.
For the foregoing reasons, the judgment and sentence of the Seneca County Court of Common Pleas is affirmed.
Judgment affirmed.
BRYANT, P.J., concurs.
[1] R.C. 2945.59 reads:
 In any criminal case is which the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing an act is material, any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question may be proved, whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant.
 Although the statute does not refer specifically to "identity," in State v. Curry (1975) 43 Ohio St.2d 66, the Ohio Supreme Court held that "identity" is included within the concept of "scheme, plan, or system." It is clear that judicial construction of R.C. 2945.59 has expanded its scope such that it is virtually identical to Evid.R. 404(B). See State v. Broom (1988), 40 Ohio St.3d 277, 281; Evid.R. 404(B), staff note.
[2] Defendant has also argued in passing that the June 19, 1995 blood sample was an illegal "fruit" of the excluded first search. We have repeatedly held that this claim is without merit. See State v. Pearson (1996), 114 Ohio App.3d, 179; State v. Pearson (November 23, 1998), Seneca App. No. 13-98-16, unreported at *8-10.
[3] In State ex rel. Ohio Bell v. Williams (1980), 63 Ohio St.2d 51,54, the Ohio Supreme Court held that Crim.R. 41(B)'s use of the word "evidence" included intangible objects. We believe the term surely encompasses bodily fluids as well.