JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant Christopher Tucker was charged with one count of aggravated robbery (count one) and two counts of attempted murder (counts two and three), all with three-year firearm specifications. The trial court eventually declared a hung jury after the jury became deadlocked. A new trial was undertaken, this time resulting in a jury verdict of guilty as to counts one and two, with the firearm specifications, and of not guilty as to count three. He was sentenced to two terms of eight years imprisonment, to be served concurrently. He now brings this appeal with five assignments of error for this court's review. For the reasons detailed below, we affirm.
 I. {¶ 2} The relevant facts are as follows. Sometime between 3:00 and 4:00 a.m. on March 5, 2000, Maggie St. Ives and her son Duncan were traveling on Solon Road towards the Plain Dealer depot to pick up papers for their paper route. As she was driving, Maggie noticed a car pull out of a parking lot and follow her. The car pulled very close to Maggie's and then pulled around and away. When Maggie approached Richmond Road, she noticed that the same car was stopped at the intersection even though the light was green. Maggie pulled around the car and the car again followed her and pulled around her. The other car stopped again, this time at a red light at Cochran Road.
 {¶ 3} Maggie was prepared to pull around the car when two young black men jumped out from the passenger side of their car and approached her van. The one that approached her side of the van pulled a gun out. Maggie drove forward, avoiding both the armed man and their car. As she was driving away, the man fired a shot, which broke the driver's side front window. The bullet split in two, part of it lodging in Maggie's forearm and the other part eventually landing on the floor of the van.
 {¶ 4} Maggie then drove to the Plain Dealer depot where she received help. She spoke to the police briefly before being taken by ambulance to the hospital. The next day, Maggie talked to Detective Strnad of the Solon Police Department. She helped him put together a computer-generated sketch. She later helped a sketch artist complete another sketch.
 {¶ 5} She described the man who shot her as a young (17-year-old or 18-year-old), light complected, black male, wearing a "do rag" on his head, a running jacket and blue jeans. Maggie testified that she had a good look at the shooter because of the lights at the intersection. Duncan testified similarly. Further, he described the car as a "small, older, kind of boxy, dark in color" with an antenna on the passenger side front door. (He explained that he likes antennas because of his interest in ham radios.) He described the lights as having "little vertical ridges." Duncan also noticed what he thought was a piece of loose molding on the passenger side of the rear of the car. Both Maggie and Duncan identified Christopher Tucker from a photo array, other photographs and a videotape.
 {¶ 6} The state presented, among others, Ishmael Brown, Veronica Baxter and Michelle Basinger. Ishmael Brown testified that, around 11:30 p.m. on March 4, 2000, while he was driving around with Sean Knox and Tucker, he was chased by police and then flipped his car. He was apprehended by police and taken to a hospital, from which he was discharged around 3:15 a.m. Knox and Tucker had run off.
 {¶ 7} Veronica Baxter testified that she bumped into Tucker in January of 2001. According to Baxter, while she and some others (including her husband and one Alex Foster) were sitting in a car, Tucker entered the car and told them that he was a "hot boy," meaning that he was wanted by the police. He explained that he had shot a lady and was about to rob her but then saw her son in the car. He also mentioned an accident that he and Brown were involved in and said that "his boy Ish" was with him when he shot the lady. She explained that "Ish" is what Tucker calls Ishmael Brown. Baxter eventually called the police and talked to Detective Strnad. Michelle Basinger, a former girlfriend of Tucker, also testified. According to her, Tucker told her that he had shot a lady, but he then said that he was just kidding.
 {¶ 8} The defense offered Foster to contradict the testimony of Baxter. He said that Tucker never got into that car and never said anything about a shooting.
 {¶ 9} "Assignment of Error No. I: The trial court's exclusion of defendant's alibi evidence violated the defendant's right to due process."
 {¶ 10} Tucker's counsel served the state with a notice of alibi on the morning of trial. The state objected to the introduction of the alibi as being untimely raised. Criminal Rule 12.1 requires a defendant to file and serve notice of the alibi seven days before trial, "unless the court determines that in the interest of justice such evidence should be admitted." In other words, the rule "grants the trial court the discretion to waive that [seven day] requirement and to admit unfiled alibi testimony if it is in the `interest of justice' to do so." Statev. Pitts (Apr. 9, 1998), Cuyahoga App. No. 72304, quoting State v. Smith
(1977), 50 Ohio St.2d 51, 53.
 {¶ 11} If the evidence is offered within seven days before trial, the court may allow the evidence in "[i]f the alibi testimony does not surprise or otherwise prejudice the prosecution's case[,] * * * if the defense operated in good faith when it failed to give proper notice of an alibi defense[,]" and if the admission of the evidence is necessary to insure the defendant a fair trial. Smith at 53.
 {¶ 12} The evidence that Tucker sought to offer was that he had been involved in a police chase the night before the incident at issue, had crashed and fled the scene, spending the night at his friend's house. Tucker was prepared to offer Ishmael Brown and LeSean Knox to testify.
 {¶ 13} Tucker argues that the evidence would not have prejudiced the state because the trial court would have allowed the state to introduce Tucker's testimony from the first trial in which he claims not to have been involved in a police chase and because the state could have introduced rebuttal testimony to show that Tucker's mother had generated alibi witnesses. Tucker's counsel claimed that the information had come to light on the evening before trial.
 {¶ 14} The state argues, persuasively, that it is incredible that Tucker himself did not tell his lawyers that he had an alibi. In fact, he testified at the first trial that he did not know anything about an accident involving Brown. Finally, a week before the offered alibi, defense counsel was suggesting that Knox was the real shooter. On the morning of trial, however, defense counsel argued that Knox was with Tucker all night and neither of them was involved in the shooting at issue.
 {¶ 15} We therefore hold that the trial court did not abuse its discretion in excluding the offered alibi evidence. It is questionable whether Tucker has met any of the three prongs for admission. (1) The testimony did surprise the state, especially considering that one of the offered witnesses was a week earlier fingered by the defense as the real perpetrator. (2) It seems unlikely that the defense acted in good faith when it offered a story flatly contradicted by the defendant himself during the original trial. (3) And finally, the admission of the evidence was not necessary to insure a fair trial.
 {¶ 16} In any event, we cannot say that "the trial court committed more than an error of law or judgment and that its decision was unreasonable, arbitrary or unconscionable." Pitts, supra, citingBlakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
 {¶ 17} This assignment is not well taken.
 {¶ 18} "Assignment of Error No. II: The trial court's denial of funds for an expert witness to testify on issues concerning eyewitness testimony was a denial of appellant's rights of due process."
 {¶ 19} Again, on the morning of trial, Tucker's counsel offered a motion to the court, this time seeking the services of an expert witness at state expense because Tucker was indigent. The offered expert was to testify about eyewitness identification. Counsel explained that "[p]eople are not generally aware of these factors that may affect the identification or misidentification" and that the offered expert could enlighten the jury about "these factors." In his brief, Tucker explained that, because Maggie was white and the suspect was black, there is "the issue of cross-racial identification."
 {¶ 20} The court denied the motion, stating that "eyewitness identification is just not, at least in this case, anything so sophisticated or tricky that the jury need an expert to come in to testify on the area." The court also objected to the proposed fee of $3,500.
 {¶ 21} Among the authority cited by Tucker in support of this argument is State v. Buell (1986), 22 Ohio St.3d 124. There, the Supreme Court held, that "[t]he expert testimony of an experimental psychologist regarding the credibility of the identification testimony of a particular witness is inadmissible under Evid. R. 702, absent a showing that the witness suffers from a mental or physical impairment which would affect the witness' ability to observe or recall events." Id., paragraph two of the syllabus. Here, Tucker has offered nothing to show that Maggie or Duncan "suffer[ed] from a mental or physical impairment which would [have] affect[ed] [their] ability to observe or recall" the events at issue.
 {¶ 22} This assignment is not well taken.
 {¶ 23} "Assignment of Error No. III: The trial court erred when it allowed the State to introduce, over appellant's objection, the admission of other acts testimony in violation of R.C. 2945.59 and Evid.R. 404(B)."
 {¶ 24} Tucker argues that the court erred by allowing in evidence that he was a passenger in the automobile that crashed during the police chase on the night at issue. Further, Tucker argues that "[e]vidence of prior acts may not be used to prove the inference that, in committing the alleged crime, the defendant acted in conformity with his other acts or that he has a propensity to act in such a manner." Finally, Tucker argues that none of the exceptions from Evid.R. 404(B)[1] or R.C. 2945.59[2]
apply.
 {¶ 25} The state counters that the evidence was introduced for the purpose of establishing identity and motive (two of the exceptions which permit the introduction of such evidence, see State v. Broom (1988),40 Ohio St.3d 277) "by placing [Tucker] in the area in which the shooting took place." The state is correct that the defense made identity an issue. See, e.g., State v. Hood (Dec. 16, 1999), Cuyahoga App. No. 75210).
 {¶ 26} "Because R.C. 2945.59 and Evid.R. 404(B) codify an exception to the common law with respect to evidence of other acts of wrongdoing, they must be construed against admissibility, and the standard for determining admissibility of such evidence is strict. [Citations omitted.] The rule and the statute contemplate acts which may or may not be similar to the crime at issue. If the other act does in fact `tend to show' by substantial proof any of those things enumerated, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident, then evidence of the other act may be admissible. [Citation omitted.]" Broom, paragraph two of the syllabus.
 {¶ 27} Here, the evidence was offered not to show propensity for criminal activity, but rather as circumstantial evidence that Tucker was near the scene of the crime with Ishmael Brown. See, e.g., State v.Pettis (Jan. 21, 1988), Cuyahoga App. No. 53175. It is worth noting again here that the state also introduced evidence that Tucker told people that he had shot a lady and that Brown was with him. Brown's testimony about the police chase and crash bolsters that testimony.
 {¶ 28} This assignment is not well taken.
 {¶ 29} "Assignment of Error No. IV: Appellant was denied effective assistance of counsel as a result of trial counsel's failure to subpoena a witness important to Appellant's defense."
 {¶ 30} Tucker argues on this appeal that his trial counsel was ineffective by failing to subpoena Detective Strnad. Defense counsel had planned to "vigorously" cross-examine Strnad, who sat with the state's attorneys through much of the trial. The state, however, decided not to call him as a witness, confirmed with him that he had not been subpoenaed by the defense, and then told him he was no longer needed. On appeal, Tucker argues that his trial counsel was so outmaneuvered by the state that it amounts to ineffective assistance of counsel.
 {¶ 31} "In order to demonstrate ineffective assistance of counsel, a defendant must prove that defense counsel's performance was deficient and that prejudice resulted from that performance. To prevail on a claim of ineffective assistance of counsel, the defendant has the burden of proving two things: (1) that defense counsel's performance fell below an objective standard of reasonableness and (2) that counsel's deficient performance prejudiced the defense. [Citations omitted.] A showing of prejudice means a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. [Citation omitted.] `[A] reasonable probability is a probability sufficient to undermine [the court's] confidence in the outcome.' [Citation omitted.]" State v. Acevedo (Aug. 3, 2000), Cuyahoga App. No. 76528.
 {¶ 32} Here, the defense's plan to cross-examine Detective Strnad falls within the category of trial tactics. For whatever reason, the defense did not want to call him as their witness and decided to wait for the state to call him. Therefore, we hold that the failure to subpoena Detective Strnad does not fall below the objective standard of reasonableness.
 {¶ 33} Further, inasmuch as Detective Strnad is the officer who first handled the case and discussed the matter with Maggie and Duncan, it is unclear how his testimony (regarding how he investigated the matter based on the information given to him) would have undermined the state's case. At trial, defense counsel argued that they planned to show the deficiency of some police procedures. The defense, however, argued that Maggie and Duncan had misidentified Tucker in the first place. Allegations of shoddy police work after the description and identification does not alter those descriptions and identifications made (repeatedly and consistently) by Maggie and Duncan. We therefore hold that the failure to call Detective Strnad does not create a reasonable probability that the result of the proceeding would have been different.
 {¶ 34} This assignment is not well taken.
 {¶ 35} "Assignment of Error No. V: Appellant's conviction * * * was against the manifest weight of the evidence, thereby denying appellant his right to a fair trial and due process of law in violation of the Sixth and Fourteenth Amendments to the United States Constitution and in violation of the Article I, Sections 10 and 16 of the Ohio Constitution."
 {¶ 36} When deciding whether the convictions under review are against the manifest weight of the evidence, this court, "reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." State v. Martin (1983),20 Ohio St.3d 172, 175.
 {¶ 37} Here, the record shows that the victims made repeated and consistent descriptions and identifications of Tucker. Other evidence placed him near the scene at around the same time. Further, two witnesses testified that they heard Tucker say that he had shot a lady. One of them testified that he stated that he had planned to rob the lady until he saw her son. (One witness did contradict the story of one of these witnesses.)
 {¶ 38} Based on a review of the record and drawing all reasonable inferences therefrom, and considering the credibility of the witnesses, we cannot say that "the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." Id.
 {¶ 39} This assignment is not well taken.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
PATRICIA A. BLACKMON, J., and ANN DYKE, J., concur.
N.B. This entry is an announcement of the court's decision. See App.R. 22(B), 22(D) and 26(A); Loc.App.R. 22. This decision will be journalized and will become the judgment and order of the court pursuant to App.R.22(E) unless a motion for reconsideration with supporting brief, per App.R. 26(A), is filed within ten (10) days of the announcement of the court's decision. The time period for review by the Supreme Court of Ohio shall begin to run upon the journalization of this court's announcement of decision by the clerk per App.R. 22(E). See, also, S.Ct.Prac.R. II, Section 2(A)(1).
[1] "Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Evid.R. 404(B).
[2] "In any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing an act is material, any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question may be proved, whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant." R.C. 2945.59.