[Cite as *State v. Simpson*, 2016-Ohio-1266.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 26631 |
| | : | |
| v. | : | Trial Court Case No. 11-CR-1356/1 |
| | : | |
| KERON D. SIMPSON | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

· · · · · · · · · · ·

O P I N I O N

Rendered on the 25th day of March, 2016.

· · · · · · · · · ·

MATHIAS H. HECK, JR., by CARLEY J. INGRAM, Atty. Reg. No. 0020084, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, P.O. Box 972, 301 West Third Street, Dayton, Ohio 45402
        Attorneys for Plaintiff-Appellee

GARY W. CRIM, Atty. Reg. No. 0020252, 943 Manhattan Avenue, Dayton, Ohio 45406-5141
        Attorney for Defendant-Appellant

· · · · · · · · · · · ·

HALL, J.

{¶ 1} Keron D. Simpson appeals from the trial court's entry of summary judgment

against him on his R.C. 2953.21 petition for post-conviction relief.

{¶ 2} Simpson advances ten assignments of error. The first five involve allegations of ineffective assistance of counsel at trial. Specifically, Simpson contends his trial counsel provided ineffective assistance by failing (1) to obtain an expert to evaluate his mental status, (2) to interview a potential witness, (3) to obtain a DNA expert, (4) to obtain an expert on witness perception, and (5) to obtain an eyewitness-identification expert. In his sixth through eighth assignments of error, Simpson claims the trial court erred in overruling his post-conviction motions for the appointment of (1) an expert to evaluate his mental status, (2) an expert on DNA, and (3) an eyewitness-identification expert. In his ninth assignment of error, Simpson asserts that the trial court erred in denying a post-conviction claim for relief based on faulty eyewitness identification. Finally, in his tenth assignment of error, Simpson contends the trial court erred in denying a post-conviction claim for relief alleging a violation of his constitutional right against self-incrimination.

{¶ 3} The record reflects that Simpson was convicted and sentenced in the above-captioned case on multiple counts of murder, aggravated robbery, having a weapon while under disability, and firearm specifications. The convictions stemmed from Simpson's participation in a shooting at an unlicensed liquor establishment. After merging certain counts, the trial court imposed an aggregate prison term of 33 years to life. This court affirmed on direct appeal in *State v. Simpson*, 2d Dist. Montgomery No. 25069, 2013-Ohio-1072.

{¶ 4} Simpson subsequently filed his petition for post-conviction relief. He raised three claims. First, he alleged that his trial counsel provided ineffective assistance by (1) failing to "secure expert testimony about the impact of cocaine on perception and

memory," (2) failing to have "DNA testimony reviewed by an expert," (3) failing to have "an expert on eyewitness identification," (4) failing to have his "mental status reviewed by a mental health professional," and (5) failing "to interview various witnesses." (Doc. #8 at 6). Second, he argued that his constitutional right to a fair trial was violated "buy [sic] the use of eyewitness identification that had a very substantial likelihood of irreparable misidentification." (*Id.* at 8). Third, he asserted that his constitutional right against self-incrimination was violated because the voluntariness of various statements he made "was litigated without considering his mental status." (*Id.* at 9). In connection with his petition, Simpson moved for the appointment of an expert witness to evaluate his mental status, a DNA expert, and an eyewitness-identification expert. (Doc. #15, 16, 17). The trial court overruled these motions. (Doc. #25). Thereafter, the State filed a combined motion for summary judgment/motion to dismiss. (Doc. #38). After briefing, the trial court entered summary judgment against Simpson on his petition. (Doc. #60). This appeal followed.

{¶ 5} As a means of analysis, we begin with Simpson's second assignment of error, which asserts that the trial court erred in denying post-conviction relief predicated on his trial counsel's ineffective assistance due to failure to "interview witnesses." In his appellate brief, Simpson actually identifies only one witness, Terrence Jones, whom his attorney failed to interview. According to Simpson, Jones gave a statement to police and identified a co-defendant other than Simpson as the person he saw fire a fatal shot inside the unlicensed liquor establishment. Simpson asserts that this statement "is consistent with [his] innocence of the murder because Jones puts the guns in the hands of the other two defendants." (Appellant's brief at 19). Simpson's trial counsel admits that he did not interview Jones, although he did review Jones' statement to police. (Affidavit, Doc. #36).

{¶ 6} The trial court rejected Simpson's argument, finding that it did not warrant even an evidentiary hearing. The trial court reached this conclusion for multiple reasons. It first concluded that Jones' police statement was "ambiguous concerning whether Mr. Simpson or one of his companions shot [victim Hank] Sanders," apparently because the statement only provided a vague physical description of the three co-defendants, including the shooter. (Doc. #60 at 10). The trial court noted Simpson's failure to present an affidavit from Jones clearly stating that Simpson did not shoot anyone. (*Id.*) The trial court then continued:

It is also noted that Terrence Jones was shown photospreads regarding Keron Simpson, Earl Moon, and Daviontae Norvell. Mr. Jones was not able to identify Mr. Norvell, but he did identify Mr. Simpson and Mr. Moon as participants in the aggravated robberies and murders at issue. This is consistent with the trial testimony of Shawn Dentel, Erika Peck, and Annette Dillard with each witness identifying Mr. Simpson as a participant in the aggravated robberies and as the person who shot Hank Sanders.

The State's theory was that Mr. Simpson shot Mr. Sanders and that Mr. Moon shot Michelle Carter. However, Mr. Simpson was also convicted of Ms. Carter's murder, and Mr. Moon was convicted of not only Ms. Carter's murder but also Mr. Sanders' murder. Given this, and even assuming that Mr. Jones would testify that either Mr. Moon or the third participant shot Mr. Sanders, such testimony would not change the trial's outcome because Mr. Simpson, as a participant in the aggravated robberies, is guilty of each

murder even if he did not fire the weapon that fatally wounded either Mr. Sanders or Ms. Carter. It is, thus, concluded that [defense counsel Bobby Joe] Cox's failure to interview Mr. Jones and pursue the suggested contradiction concerning who shot Mr. Sanders would not have changed the trial's outcome. It is, therefore, concluded that Mr. Simpson has not met his initial burden to establish a substantial basis that Mr. Cox's failure to interview Terrence Jones would have changed the trial's outcome. As such, this contention may be dismissed without a hearing through summary judgment. This conclusion leads to the further conclusion that Keron Simpson's motions relating to Terrence Jones' statement are appropriately overruled.

(*Id.* at 11).

{¶ 7} On appeal, Simpson completely ignores the trial court's observation that he was guilty of murder, as an aider and abettor, even if we accept, arguendo, that he did not personally shoot Sanders. (Appellant's brief at 19-20; Reply brief at 3). We believe the trial court was correct. Simpson has not shown any possibility that the outcome of his trial would have been different if defense counsel had interviewed Jones. Even if Jones would have identified someone else as the shooter, Simpson still would have remained guilty of murder as an aider and abettor. Accordingly, the second assignment of error is overruled.

{¶ 8} We turn next to Simpson's first, third, fourth, and fifth assignments of error, which we will address together. In these assignments of error, Simpson claims the trial court erred in rejecting his post-conviction claim for relief based on his trial counsel's

failure to obtain experts to address (1) his mental status, (2) DNA evidence, (3) witness perception and memory, and (4) eyewitness identification.

{¶ 9} With regard to trial counsel's failure to obtain experts on DNA evidence, witness perception and memory, and eyewitness identification, we do not know what such experts would have concluded, or whether they would have aided Simpson's defense, because his petition for post-conviction relief is devoid of evidence outside the record from such experts. We recognize that Simpson's request for appointment of experts who theoretically might have supplied additional evidence was denied, but we deal with that issue in our analysis of his sixth, seventh and eighth assignments of error. Absent evidence outside the record to support his claim that failure to retain experts was prejudicial to him, Simpson cannot succeed on his post-conviction claim based on trial counsel's failure to secure such experts. Accordingly, his third, fourth, and fifth assignments of error are overruled.

{¶ 10} We reach a similar conclusion with regard to Simpson's argument about trial counsel's failure to retain an expert to evaluate his mental status, which is the subject of his first assignment of error. Simpson asserts that he suffers from an intellectual disability, namely "mental retardation," that his trial counsel failed to recognize this disability or to make any "adjustment" for it, and that counsel should have retained a mental-health expert to evaluate him. He argues that counsel's failure to do so constituted ineffective assistance. In support of his post-conviction claim about the need for an evaluation of his mental status, Simpson provided the trial court with his Dayton Public School records and Social Security Administration records. Those records show that he received low grades in school, that he participated in a special-education program, that

he had a full-scale I.Q. of 53, and that he was classified as "mildly mentally retarded." He also provided an affidavit stating that his trial counsel, Bobby Joe Cox, knew he had a "learning disability." (Doc. #8 at Simpson affidavit).

**{¶ 11}** The trial court rejected Simpson's claim for post-conviction relief based on counsel's failure to have an expert review his mental status. In support, the trial court noted that Simpson was not claiming he was legally incompetent to stand trial. Instead, he was claiming that, as a result of his deficient mental status, he could not properly waive his *Miranda* rights or assist counsel in making important trial decisions. The trial court found "significant difficulty" with such a distinction. It noted that "[t]he issues of a voluntary *Miranda* waiver, trial assistance, and trial decision making relate to competence, yet Mr. Simpson does not suggest such incompetence." (Doc. #60 at 8). The trial court then continued:

The indicated records, which the trial court has carefully reviewed, do not, in any event, demonstrate that Mr. Simpson's level of mental functioning affected his ability to understand and knowingly and voluntarily waive his *Miranda* rights, to provide assistance to Mr. Cox, or to be involved in trial strategy decisions. Mr. Simpson, other than filing the records, has presented no evidence that Mr. Simpson's mental status affected him as suggested.

Mr. Simpson's contention is compromised, if not dispelled, by Mr. Simpson's video captured demeanor and conduct during video recorded interviews. Mr. Simpson, despite his suggestion to the contrary, was engaged and alert during the interviews. The interviews reveal no cause for

concern regarding Mr. Simpson's mental status. Mr. Cox, going first to the issue of ineffective assistance, had no reason to have Mr. Simpson's mental status evaluated based upon his assumed knowledge that Mr. Simpson had a learning disability. Further, Mr. Simpson's verbal competence and demeanor, again as reflected by Mr. Simpson's video recorded interviews, would not reasonably have alerted Mr. Cox that a mental status evaluation was appropriate. Further, Mr. Simpson, as noted, has not supplied the court with information demonstrating that Mr. Simpson's mental status compromised his ability to knowingly and voluntarily waive his *Miranda* rights, to assist counsel, and to be involved in trial decisions. There is, upon this record, no basis upon which to conclude that Mr. Cox's performance was ineffective based upon his failure to have Mr. Simpson's mental status evaluated. It is also noted that Mr. Simpson has not presented evidence or argument demonstrating how a mental status evaluation would have affected the trial's outcome. The trial, since Mr. Simpson does not suggest he was not competent to stand trial, would have occurred even if a mental status examination had been conducted. Mr. Simpson does not suggest and the court cannot fathom how the trial's outcome would have been affected by the assumed mental status examination.

Mr. Simpson, in summary, has failed in his initial burden to demonstrate a substantial basis upon which it could be concluded that Mr. Cox was ineffective for not having Mr. Simpson's mental status evaluated or that such an examination would have affected the trial's outcome. As

such, this claim may be dismissed without an evidentiary hearing through the grant of summary judgment.

(Doc. #60 at 8-9).

{¶ 12} On appeal, Simpson reiterates his claim that his mental status affected his ability to waive his *Miranda* rights as well as decisions such as whether to go to trial or whether to testify and his ability to assist trial counsel in presenting a defense. Therefore, he argues that his trial counsel should have investigated his mental status and retained an expert to evaluate that status after being informed that he had a "learning disability." In connection with his argument, Simpson also asserts that developmental disability or "mental retardation," which he purportedly suffers from, cannot be detected though observation by a lay person.

{¶ 13} Having reviewed Simpson's argument and his evidentiary materials, we see no error in the trial court's rejection of his claim without a hearing. As a preliminary matter, Simpson does not challenge the trial court's finding that his demeanor and conduct during recorded interviews gave no outward indication that his mental status was impaired. According to Simpson's affidavit accompanying his petition, defense counsel had been told only that he had a "learning disability," which Simpson acknowledges in his appellate brief "is not as bad in society's eyes as suffering from mental retardation, or as it is now defined, developmental disability." (Appellant's brief at 17). We are unconvinced that being told Simpson had a learning disability reasonably should have alerted defense counsel of the need to have his "mental status" evaluated, particularly in light of what the trial court found to be Simpson's appropriate behavior on recorded videos. This is true even if we accept that Simpson in fact does suffer from "mild mental retardation."

Simpson's own admission, that his degree of developmental disability or "mental retardation" would not be detected by a lay person, leads to the conclusion that his mental status would not have been evident to his trial counsel either.

{¶ 14} We also agree with the trial court that evidence of Simpson's low I.Q. and "mild mental retardation" fails to raise an issue as to his ability to assist trial counsel in making strategic decisions. The trial court found that Simpson was not claiming to be incompetent to stand trial, and Simpson has not challenged that finding on appeal. But if Simpson does not claim his mental status rendered him legally incompetent, then we fail to see the significance of, or the need for, trial counsel to have an expert evaluate his mental status. By definition, if Simpson was legally competent to stand trial, then he was sufficiently able to assist his attorney in making strategic decisions. We are unaware of any authority that would have imposed on Simpson's attorney an obligation to seek an expert opinion on his "mental status" under the circumstances before us. Moreover, we agree with the trial court that the evidentiary materials accompanying Simpson's petition—Dayton Public School and Social Security Administration records—did not provide a substantial basis for concluding that Simpson's mental status compromised his ability to knowingly and voluntarily waive his *Miranda* rights, to assist defense counsel, or to be involved in trial decisions. Finally, we have no way of knowing what result a mental-status evaluation would have produced in the trial court, what conclusion a mental-health expert retained by defense counsel would have reached, or whether such an evaluation would have assisted Simpson. Therefore, Simpson also cannot establish that he was prejudiced by his attorney's failure to obtain a mental-status evaluation. The first assignment of error is overruled.

{¶ 15} In his sixth, seventh, and eighth assignments of error, Simpson asserts that the trial court erred in overruling his post-conviction motions for the appointment of experts to evaluate his mental status, DNA evidence, and eyewitness identification/perception. (Appellant's brief at 21). Specifically, the sixth assignment of error concerns the trial court's rejection of his post-conviction request for an order appointing Julie Gentile, M.D., to provide a preliminary review of documents concerning his "mental status." In particular, Simpson wanted Gentile to review the Dayton Public School and Social Security Administration records mentioned above to bolster his post-conviction claim that he suffered from a developmental disability. His seventh assignment of error concerns the trial court's rejection of his post-conviction request for an order appointing an expert to review the State's DNA evidence. Finally, the eighth assignment of error concerns the trial court's rejection of his post-conviction request for the appointment of an eyewitness-identification/perception expert to support his post-conviction claim about allegedly faulty eyewitness-identification testimony at trial.

{¶ 16} We see no error in the trial court's denial of Simpson's motions for appointment of the foregoing experts in connection with his petition for post-conviction relief. The short answer to his arguments is that he had no right, statutory or constitutional, to the appointment of experts to assist in his post-conviction relief petition. This court has held that "indigent prisoners are not entitled to funding for experts when pursuing collateral attacks on their convictions." *State v. Hooks*, 2d Dist. Montgomery Nos. 16978, 17007, 1998 WL 754574, *3 (Oct. 30, 1998). This is so because "[p]ost-conviction relief is not a constitutional right, and it affords a petitioner no rights beyond those granted by

the controlling statute, R.C. 2953.23." *State v. Osie*, 12th Dist. Butler No. CA2014-10-222, 2015-Ohio-3406, ¶ 31. "[I]t is not error for a trial court to deny a request * * * for the appointment of an expert in a post-conviction relief petition because Ohio's statute, R.C. 2953.21, does not provide * * * a right * * * to expert assistance." *Id.* at ¶ 40; *see also State v. Bennington*, 4th Dist. Adams No. 12CA956, 2013-Ohio-3772, ¶ 25, fn. 4 (citing cases for the proposition that "R.C. 2953.21 does not provide a right to funding or appointment of expert witnesses or assistance in a post-conviction petition").

**{¶ 17}** In opposition to the foregoing conclusion, Simpson cites *State v. Mason*, 82 Ohio St.3d 144, 694 N.E.2d 932 (1998), *State v. Broom*, 40 Ohio St.3d 277, 533 N.E.2d 682 (1988), and *Ake v. Oklahoma*, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985). None of these cases, however, involved a petition for post-conviction relief. *Mason*, *Broom*, and *Ake* were capital cases that involved the appointment of experts to assist at the trial level. Therefore, they are inapposite. The sixth, seventh, and eighth assignments of error are overruled.

**{¶ 18}** In his ninth assignment of error, Simpson argues that the trial court erred in rejecting his post-conviction claim for relief based on allegedly faulty eyewitness identification. Specifically, he complains that his "right to a fair trial" was violated "by the admission of an unfair eyewitness identification procedure." (Appellant's brief at 29). This assignment of error lacks merit. Because Simpson's post-conviction relief petition presented no evidence outside the record to support his eyewitness-identification challenge, res judicata applies. Moreover we specifically dealt with asserted error in the eyewitness identification in his direct appeal. Accordingly, the ninth assignment of error is overruled.

{¶ 19} In his tenth assignment of error, Simpson contends the trial court erred in rejecting his post-conviction claim for relief based on an alleged violation of his constitutional right against self-incrimination. In support of this claim, Simpson argued in his petition that the admissibility of various custodial statements he made had been litigated below "without considering his mental status." (Doc. #8 at 9). The trial court rejected this argument, reasoning: "The material[s] Mr. Simpson has presented in support of this argument—school and social security records—fail to demonstrate that Mr. Simpson's mental status was such that he could not understand his *Miranda* rights and knowingly waive such rights." (Doc. #60 at 12).

{¶ 20} On appeal, Simpson simply cites a law review article to support the proposition that "mentally retarded" individuals do not understand *Miranda* rights. (Appellant's brief at 29-30). He then asserts that the admissibility of his statements "rested on a foundation that did not have all of the facts." (*Id.* at 30).

{¶ 21} The record reflects that Simpson filed a suppression motion that addressed, among other things, custodial statements he had made to police. He sought suppression of the statements, challenging the validity of his waiver of his *Miranda* rights prior to making the statements. The trial court filed a decision, entry, and order overruling Simpson's motion. In relevant part, the trial court found that he had been advised of his *Miranda* rights prior to custodial interrogations on December 27, 2010 and December 28, 2010 and that, on each occasion, he validly had waived those rights. (Nov. 8, 2011 decision, entry, and order at 9-11). The trial court specifically found "nothing to suggest" that a "cognitive defect" or anything else prevented Simpson from making a valid waiver.

(*Id.*). On appeal, this court rejected Simpson's challenge to the voluntariness of his statements and his *Miranda* waiver. *State v. Simpson*, 2d Dist. Montgomery No. 25069, 2013-Ohio-1072, ¶ 51-58. As set forth above, the trial court subsequently found that Simpson's post-conviction evidentiary materials failed to raise a viable claim regarding the admissibility of his statements to police.

{¶ 22} We see no error in the trial court's rejection of Simpson's post-conviction claim addressing whether his custodial statements were admissible. We reach this conclusion for at least two independent reasons. First, a review of the trial transcript reveals that the State neither introduced any of Simpson's custodial statements into evidence nor presented any testimony regarding what those statements were. Because the State did not use the challenged statements, we see no basis for post-conviction relief premised on the statements being made in violation of Simpson's constitutional rights. Second, in any event, the materials accompanying Simpson's petition failed to support his claim that his "mental status" resulted in him making involuntary or otherwise inadmissible statements. Those materials included the Dayton Public School and Social Security Administration records discussed above as well as affidavits from Simpson and his mother. The records show that Simpson received low grades in school, that he participated in a special-education program, that he had a full-scale I.Q. of 53, and that he was classified as "mildly mentally retarded." The affidavits state that Simpson was in special-education classes, that he had a learning disability, that he took Ritalin as a child, and that he received Supplemental Security Income benefits. (See affidavits accompanying Doc. #8).

{¶ 23} In our view, the foregoing evidence failed to support a finding that Simpson's

waiver of his *Miranda* rights was less than knowing, intelligent, and voluntary or that his statements themselves were involuntarily made. The mere fact that Simpson may have a learning disability or suffer from "mild mental retardation" does not necessarily negate his ability to make a knowing, intelligent, and voluntary statement to police. In his reply brief, Simpson himself admits that he needs testimony from a mental-health expert to support the allegations in his tenth assignment of error. (Appellant's reply brief at 5). He also acknowledges that his lack of such evidence "would require the denial of this assignment," but claims that he cannot afford to hire an expert. (*Id.*). As explained in our analysis of Simpson's sixth, seventh, and eighth assignments of error, however, he had no right to court-appointed experts in post-conviction-relief proceedings. Accordingly, the tenth assignment of error is overruled.

{¶ 24} The judgment of the Montgomery County Common Pleas Court is affirmed.

. . . . . . . . . . . . .

DONOVAN, P.J., and WELBAUM, J., concur.

Copies mailed to:

Mathias H. Heck, Jr.
Carley J. Ingram
Gary W. Crim
Hon. Michael Tucker